The **LIBERTARIAN PARTY OF TEXAS,**
et al., Plaintiffs-Appellants,

v.

John W. **FAINTER,** Jr., Secretary of State
of Texas, and Anita Rodeheaver, Coun-
ty Clerk of Harris County, Texas, De-
fendants-Appellees.

No. 84–2446

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 31, 1984.

Opinion on Denial of Rehearing
Sept. 21, 1984.

Boanerges & Yaussy, Laura B. Yaussy,
James Boanerges, Houston, Tex., for plain-
tiffs-appellants.

Jim Mattox, Atty. Gen., David R. Rich-
ards, Robert L. Lemens, Asst. Attys. Gen.,
Austin, Tex., for defendants-appellees.

Roderick Q. Lawrence, Houston, Tex.,
for Rodeheaver.

Before GEE, JOHNSON, and DAVIS,
Circuit Judges.

PER CURIAM:

I.

In July 1984 several members of the
Libertarian Party of Texas (the Libertari-
ans) filed this suit challenging the constitu-
tionality of two provisions of the Texas
statutory scheme prescribing the require-
ments a political party must meet in order
to have the names of its candidates printed

on the general election ballot. Under Texas Election Code Annotated Art. 13.45(1) (Vernon's Supp.1984), any political party which receives more than two percent of the total number of votes cast in the last Texas gubernatorial election may have its candidates printed on the ballot after holding either a primary election or nominating conventions. One method by which a party receiving less than two percent of the total vote in the last governor's election may have its candidates printed on the ballot is to amass petitions containing signatures representing at least one percent of the total number of votes in the last governor's election. The petitions must include the address and voter registration number of each signatory, and may not be signed by any voter who has participated in another party's primary or nominating convention. Id. § 13.45(2).

In this suit, the Libertarians challenge two aspects of this scheme. First, they allege that the state's requirement that a party poll more than two percent of the votes in the *governor's* election is arbitrary, and the fact that Libertarian candidates polled over two percent in two other statewide races demonstrates that they have sufficient support to satisfy the state's interest in insuring that only serious candidates appear on the ballot. Second, they contend that the requirement that the signatures on the petitions required by Art. 13.45(2) be accompanied by voter registration numbers is not necessary to serve any compelling interest of the state, and is so burdensome that it prevented them collecting the number of signatures necessary to have their candidates placed on the ballot. After an evidentiary hearing, the district court denied the Libertarian's request for a preliminary injunction. Since the ballots for the November general election must be finalized by September 12, we granted expedited review. We now affirm.

## II.

■ The prerequisites for preliminary injunctive relief are long-established in this circuit: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a

substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest. *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). In this case the Libertarians have not shown a substantial likelihood that they will prevail on the merits, and so do not clear the hurdle of the first requirement.

■ The complexities of constitutional analysis of ballot access regulations are set out at exhaustive length in *Dart v. Brown,* 717 F.2d 1491 (5th Cir.1983), and this scholarship need not be duplicated in this opinion. The statutory scheme in question here was approved by the United States Supreme Court in *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), and it has not been changed in any respect material to this case since that time.[1] The Libertarians argue that the elements of the Texas scheme that they now raise were not before the Supreme Court in *American Party* and therefore that case cannot be considered as conclusive of their constitutionality. With regard to the Libertarian's contention that use of vote percentages in the governor's race alone to determine ballot access is unconstitutional, we disagree. *American Party* specifically states that the Texas requirement of one percent of the total vote for *governor* on ballot petitions "falls within the outer boundaries of support the state may require before according political parties ballot position." 415 U.S. at 783, 94 S.Ct. at 1307, 39 L.Ed.2d at 761. The Court was doubtless aware that Texas held elections for statewide offices other than the governorship, but nonetheless approved a percentage of the governor's race vote as an acceptable means of measuring support. By the same token, the two percent requirement for automatic inclusion on the ballot may be measured by reference to the governor's race.

■ The Libertarian's contention that the requirement of voter registration num-

1. *Dart v. Brown* also considers the standard of review to be applied in cases of this nature, agreeing with Professor Tribe that the standard applied in *American Party* was perhaps strict scrutiny in name, but not in application. 717 F.2d at 1503. Since the first of the issues raised in this case is directly controlled by *American Party* and we do not reach the constitutional question on the second, the precise standard of review is not a major factor in this decision.

bers on the ballot petitions does not pass constitutional muster is not foreclosed by *American Party,* but the record before us does not allow us to give this issue the careful consideration it deserves. It is true, as the state argues, that this requirement was part of the Texas scheme at the time of the *American Party* decision. See 415 U.S. at 774, n. 6, 94 S.Ct. at 1302, n. 6, 39 L.Ed.2d at 756, n. 6. However, it is also true that this particular aspect of the Texas statute was not addressed in *American Party,* and that since 1974, record-keeping procedures in the Texas electoral system may well have advanced to the point that the original justification (presumably facilitating validation of signatures) for requiring registration numbers no longer exists. The state contends in its brief that the Secretary of State's representative testified that they could not validate the signatures on the petitions or determine whether the voter had participated in the previous primary elections without the registration number, but we are left without a clue why this is so. The testimony of the Secretary of State's representative indicates only that in validating the petitions, state employees go to various counties and check the signatures and registration numbers. His testimony does not indicate how the registration number is necessary to the validation process. In short, the state has asserted that registration numbers are "necessary to serve a compelling state interest," but they have done nothing to prove it.

Nonetheless, the Libertarians have not come forward with sufficient evidence to warrant the issuance of an injunction. An essential element of the Libertarian's challenge to the registration number requirement is that it required them to divert a significant amount of their limited resources from actually collecting signatures to matching signatures with registration numbers. At the evidentiary hearing, the Libertarians were unable to produce any evidence of the number of signatures they actually collected. Their witnesses testified that approximately 40 to 60% of their time was spent in matching signatures to voter registration numbers. They made no showing that they collected even a small percentage of the approximately 32,000 signatures required to meet the one percent requirement. This left the district court, and leaves us, without even the slenderest basis for determining the effect of the reg-

istration number requirement on their solicitation efforts. An injunction in so weighty a matter as this should certainly not be granted simply because a potentially unconstitutional statutory provision is on the books, absent a showing of causal nexus with plaintiff's injury.

AFFIRMED.

## ON PETITION FOR REHEARING

On petition for rehearing, appellant has raised two issues which merit attention. The first is that since the Libertarian's ballot petitions were introduced as an exhibit, there was a basis on which the trial court and this court could have found a causal nexus between the voter registration number requirement and the Libertarian's failure to gather the required number of signatures. The Libertarian's own witnesses declined to estimate the number of signatures on the petitions. The burden is on the litigating party to put its evidence in a form the court can reasonably use.

The second point raised is that the court did not rule on the rights of the Libertarian-affiliated school trustees to remain in office. This claim was not ruled on by the trial court when it denied the preliminary injunction and therefore is still before the district court.

The application for rehearing is therefore DENIED.