James C. Linger, Butler & Linger, Tulsa, Okl., for plaintiffs.

Paul D. Rich, Asst. Atty. Gen., Austin, Tex., for defendant.

**Dianne PILCHER, et al.,**

v.

**Jack RAINS, Secretary of State for the State of Texas.**

**Civ. No. A–86–CA–430.**

United States District Court,
W.D. Texas,
Austin Division.

March 9, 1988.

## ORDER

NOWLIN, District Judge.

This is a ballot access case brought against Jack Rains in his official capacity as Secretary of State of Texas by three individuals and the Libertarian Party of Texas, seeking declaratory and injunctive relief. Plaintiffs allege that Sections 141.062(a)(3), 141.063(2)(B), and 181.006(b)(1) of the Texas Election Code are unconstitutional in that said laws are unnecessarily burdensome, oppressive, discriminatory, vague, overbroad, and arbitrary in violation of their rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and of their rights to equal protection and due process.

This matter having been tried before the Court on the 11th day of February, 1988 without a jury, the Court hereby makes the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

1. The individual Plaintiffs are members of the Libertarian Party of Texas, desirous of casting their votes in the future for Libertarian candidates in Texas, and anticipate that in the future they will have to comply with the Texas election laws which require that petitions for new party recognition have a voter registration number in order for the signature to be valid.

2. Plaintiff Libertarian Party of Texas is currently one of the three recognized political parties of the State of Texas.

3. All of the individual Plaintiffs are citizens of the State of Texas, and of the United States of America.

4. Defendant, Jack Rains, is the Secretary of State for the State of Texas. Said Defendant Secretary of State oversees the Texas election laws in regard to the recognition of new political parties.

5. The Defendant Secretary of State, in enforcing the election laws of the State of Texas in question herein, acts under color of State law.

6. The election laws of the State of Texas that require the voter registration number on a political party petition in order to make it valid are Texas Election Code §§ 141.062(a)(3), 141.063(2)(B), and 181.006(b)(1) (Vernon 1986).

7. Texas Election Code § 141.062(a)(3) (Vernon 1986) provides as follows:

(a) To be valid, a petition must:

\* \* \* \* \* \*

(3) comply with any other applicable requirements for validity prescribed by this code.

8. Texas Election Code § 141.063(2)(B) (Vernon 1986) provides:

A signature on a petition is valid if:

\* \* \* \* \* \*

(2) the petition includes the following information with respect to each signer:

\* \* \* \* \* \*

(b) the signer's voter registration number and, if the territory from which signatures must be obtained is situated in more than one county, the county of registration; ...

9. Texas Election Code § 181.006(b)(1) (Vernon 1986) provides:

(b) A petition must:

(1) satisfy the requirements prescribed by section 141.062 for a candidate's petition; ...

10. Texas Election Code § 181.006(b)(2) (Vernon 1986) provides:

(b) A petition must:

\* \* \* \* \* \*

(2) contain signatures in a number that, when added to the number of convention participants indicated on the lists, equals at least one percent of the total number of votes received by all candidates for governor in the most recent gubernatorial general election; ...

11. The number of signatures that have or will be required in order for a minor political party to be recognized and placed on the general election ballot in Texas was or is:

1980 ..................... 23,698
1982 ..................... 23,698
1984 ..................... 31,911
1986 ..................... 31,911
1988 ..................... 34,415

12. In Texas, persons wanting to petition for access to the ballot have access to voter registration records in all counties in Texas. Any political party may obtain copies of the county's precinct list of registered voters free of charge.

13. Whether an individual in Texas is a registered voter and has voted in the recent Republican or Democratic primaries, and the efore is eligible to sign a minor political party petition in Texas can be determined from the various State records using that individual's name and address (including

county), without the need of a voter registration number.

14. The Libertarian Party of Texas, pursuant to Section 181.006 of the Texas Election Code, turned in petition signatures of 39,130 individuals to the Texas Secretary of State in 1986. Of these 39,130 signatures, 35,293 had the voter registration number of the petition signer, and 3,837 did not have the voter registration number of the petition signer.

15. The voter registration number is a unique identifier that is relied upon by the Secretary of State in his efforts to review the qualifications of the voters that signed the petition submitted for recognition of a political party.

16. According to the National Ballot Access Coordinator for the New Alliance Party who testified that he is familiar with ballot access laws in all of the states, no other state requires voter registration numbers on petitions for party recognition.

17. There are problems associated with using a voter's Texas Driver's License Number or his or her Social Security Number as a unique identifier in lieu of the voter registration number. The State of Alaska has opted to use the voter's birthday along with his or her name for identification purposes.

18. After the office of the Secretary of State receives a petition, an employee of the Secretary of State counts the number of pages and stamps the pages with a numbering stamp. The person submitting the petition is provided a receipt for the number of pages received. Next, an employee of the Secretary of State posts a notice of receipt of the petition.

19. Employees review the petition to determine that the individual signature blocks contain all the information that is required, that is, the individual's signature, printed name, street address, city, county, voter registration number, and date signed. The signature blocks that do not contain all the required information are marked with a high-lighting marker.

20. An employee counts the number of signature blocks containing all the mandatory information, excluding the signature blocks that have been highlighted from this count. An employee numbers every signature block containing all the required information.

21. If the number of signature blocks that are eligible to be counted equals or exceeds the number of signatures required, then employees of the Secretary of State will cause their computer system to generate random numbers in a number equal to the number of voter signatures that will be examined to determine the validity of the signatures in the petition. The State examines one percent of the signatures or 1,000 signatures, whichever number is larger.

22. Employees review the petitions, pull out the pages containing the signatures corresponding to the randomly generated numbers, and make photocopies of the pages containing these signatures.

23. The Secretary of State sends employees out to the counties to verify the randomly selected signatures.

24. Using the individual's voter registration number, the employees check county voter registration records to verify that the individual is currently registered to vote in that county, and to obtain the precinct of registration for the individual.

25. Once registration is verified and the precinct of registration is obtained, employees examine the precinct lists of registered voters which were used at the primaries to verify that the signer did not vote in the primaries or runoff primaries. The employees must check two to four documents to obtain this information, depending on whether different lists were used at the primaries and runoffs.

26. In heavily populated counties such as Tarrant, Dallas, Bexar and Harris, the voter registration records are housed in computers. In these counties, the Secretary of State's employee enters the voter registration number into the computer and gains direct access to the individual's voter registration record.

27. The Secretary of State's staff searched the State computer master file of voter registration records for Harris, Dal-

las, and Bexar Counties using the names James Smith, Mary Brown and Juan Garcia. There were 215 James Smiths registered to vote in Harris County, 250 registered in Dallas County, and 66 registered in Bexar County. There were 125 Mary Browns registered in Harris County, 250 registered in Dallas County, and 39 registered in Bexar County. There were 32 Juan Garcias registered in Harris County, 34 registered in Dallas County, and 88 registered in Bexar County.

28. Without the voter registration number, employees of the Secretary of State would have to examine each individual record to determine which James Smith, Mary Brown or Juan Garcia signed the petition.

29. The Secretary's staff did not examine whether any of the James Smiths in any of the counties resided at the same street address. Likewise, they did not make this inquiry as to the Mary Browns or Juan Garcias. Theoretically, it is possible that two persons with the same name could reside at the same address. No evidence has been presented that this possibility has actualized.

30. The Secretary has not presented any evidence regarding the number of times that a person whose signature has been randomly selected for verification shares a name with another registered voter in the same county. Therefore, while theoretically the existence of more than one registered voter in a county with the same name could slow the signature verification procedure if signatures were verified by name rather than voter registration number, the Secretary has not shown that the procedure would in fact be slowed.

31. The following is a list of minor parties that have been successful in gaining ballot status since 1976:

1976 ..........American Party
1978 ..........Raza Unida Party
1980 ..........Libertarian Party
1982 ..........Libertarian Party
1984 ..........None
1986 ..........Libertarian Party
1988 ..........Libertarian Party

32. Independent candidates must collect petitions containing the same information as is required on minor party petitions, including the voter registration number. Issues to be placed upon a ballot also require application by petition including the voter registration number.

33. Less than two percent of the persons who signed petitions for the Libertarian Party of Texas in 1986 knew their voter registration number or had it with them at the time they signed the petition.

34. Fifty to seventy percent of the time spent by the Libertarian Party in their 1986 petition drive was spent locating the voter registration numbers that corresponded to the signatures on the petitions. It takes several minutes per signature to verify whether the person who signed the petition is a registered voter and whether he or she has voted in a primary or primary run-off.

35. Members of the Libertarian Party used the following procedure to match a voter registration number to a signature on their 1986 petition. First, they went to the office for the county in which the signer resided. They then searched microfiche records of the county's registered voters for the name of the signer. These records are kept in alphabetical order. If the records revealed more than one person in the county with the same name, then they would match the address on the petition to the address on the microfiche. After locating the entry on the microfiche which corresponded with the signature on the petition, they copied the voter registration number listed on the microfiche onto the appropriate space on the petition.

36. Plaintiffs were able to verify whether the following persons were registered Texas voters in 1986, and whether they had voted in the 1986 Democratic and Republican primaries and primary runoffs: San Antonio Mayor Henry Cisneros, San Antonio Councilmembers Maria Antonietta Berriozabel, Helen Dutmer, Yolanda Padilla Vera, and James C. Hasslocher, Judge James R. Nowlin, Myra A. McDaniel, John P. Steiner, Hyattye O. Simmons, and James Lee Murphy, III. This verification was done with the individuals' names alone.

## II. CONCLUSIONS OF LAW

Plaintiffs claim that Sections 141.-062(a)(3), 141.063(2)(B), and 181.006(b)(1) of the Texas Election Code are unconstitutional insofar as they require signatures on unrecognized political party petitions be accompanied by the signer's voter registration number for those signatures to be valid. The parties agree that the contested issues of law are:

1. Whether Texas Election Code §§ 141.062(a)(3), 141.063(2)(B), and 181.-006(b)(1), as applied to Plaintiffs herein in subsequent Texas general elections are illegal and unconstitutional, in that they violate the rights of the Plaintiffs under the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, because the aforesaid statutes are not framed in the least restrictive manner necessary to achieve the legitimate state interests in regulating access to its ballot.

2. Whether the Texas Election Code sections, as applied to the Plaintiffs herein in subsequent Texas general elections, are illegal and unconstitutional, in that they violate the rights of the Plaintiffs under the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, because the aforesaid statutes are unnecessarily burdensome, oppressive, discriminatory, vague, overbroad, and arbitrary and therefore violate the Plaintiffs' rights to due process and equal protection of the laws.

The Court notes that Defendant has not denied that the challenged Texas Election Code sections implicate Plaintiffs' fundamental rights secured by the First and Fourteenth Amendments. Ballot access restrictions burden two fundamental rights protected by the Constitution, i.e., the right to political association, and the right to cast votes effectively. *Illinois State Board of Elections v. Socialists Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979); *Williams v. Rhodes,* 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). While the State may use its police power to impose some restrictions on candidate eligibility in order to ensure that elections are fair, honest, and orderly, *Storer v. Brown,*

415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974), the rights of voters and the rights of candidates cannot be easily separated; therefore, ballot access restrictions have been found to impact voters and their Constitutional rights. *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). In considering the validity of the restrictions challenged in this case, the Court examines whether or not the challenged restrictions are necessary to further compelling state interests. *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974).

In applying the standard for analyzing ballot access cases, the Court follows the three criteria set forth in the Supreme Court's decision in *Anderson v. Celebrezze,* 460 U.S. at 789, 103 S.Ct. at 1570. The Court first considers the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments. Second, the Court considers and identifies the precise interests which are put forth by the State of Texas as justifications for the burden imposed by the voter registration number requirement. Finally, the Court considers the extent to which the State's interests make it necessary to burden the Plaintiffs' rights. After weighing all these factors in the case at bar, it is the opinion of this Court that the Secretary of State of the State of Texas has failed to show a necessity for the inclusion of the voter registration number with petition signatures on petitions seeking new party ballot recognition.

Secretary of State Rains argues that the Supreme Court's ruling in *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), mandates a ruling in his favor. The requirement that an application by petition must include the voter registration number of each signer was part of the election scheme that the United States Supreme Court upheld in *American Party.* This argument is without merit, however, as the Fifth Circuit has noted that the *American Party* decision does not foreclose a constitutional attack on the requirement of voter registration

numbers on ballot petitions. *Libertarian Party of Texas v. Fainter,* 741 F.2d 728, 729–30 (5th Cir.1984). Before affirming the district court decision to deny Plaintiffs' application for preliminary injunction, the Fifth Circuit stated,

> It is true, as the state argues, that this [voter registration number] requirement was part of the Texas scheme at the time of the *American Party* decision.... However, it is also true that this particular aspect of the Texas statute was not addressed in *American Party,* and that since 1974, record-keeping procedures in the Texas electoral system may well have advanced to the point that the original justification (presumably facilitating validation of signatures) for requiring registration numbers no longer exists.

*Id.* at 730.

In 1986, in attempting to meet the one percent requirement of Texas Election Code section 181.006(b)(2), the Libertarian Party presented 39,130 signatures to the Texas Secretary of State, of which 35,293 had the voter registration number on them. In obtaining these 35,293 signatures which contain the voter registration number of the individual Texas voters, the Libertarian Party of Texas spent between fifty and seventy percent of the time in their petition drive looking up voter registration numbers. In the direct solicitation of Texas voters during the 1986 Libertarian Party petition drive in Texas, only two to five percent of the voters who signed the Libertarians' petition had their voter registration cards with them. Very few people have memorized their voter registration numbers. Finally, the Court notes that Plaintiffs were able to inquire whether several prominent individuals in Austin and San Antonio, Texas, are eligible to sign third party petitions, knowing only these individuals' names. Defendant admits that verification of signatures can be done with the signer's name and address alone, although he argues that this alternate procedure would be more time-consuming.

In applying the three pronged requirement of the Supreme Court in *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), the Court first notes the substantial character and magnitude of the injury to Plaintiffs in complying with the voter registration number requirement. Between one-half and two-thirds of the Plaintiffs' time in conducting their 1986 petition drive was directed toward complying with the voter registration number requirement.

The State interest in the voter registration requirement is maintaining the integrity of the electoral process by assuring that the persons signing third party petitions are eligible to do so. A person is eligible to sign in a given year only if he is a registered Texas voter who has not voted in that year's Republican and Democratic primaries or primary runoffs. The Court is not persuaded that the State's interest in verifying the validity of petition signatures necessitates the voter registration number requirement. Plaintiffs and Defendant produced evidence that the State can make the same inquiry regarding each petition signature using the signer's name, and if necessary address, as it can make with the voter registration number.

While the State is accustomed to using the voter registration number to make the inquiry, the procedure is not necessary to verify the signatures. Accordingly, the Court hereby concludes that sections 141.-062(a)(3), 141.063(2)(B), and 181.006(b)(1) of the Texas Election Code are not framed in the least restrictive manner necessary to achieve the legitimate interests of Texas in regulating access to its ballot. The Court finds that these sections violate Plaintiffs' rights under the First and Fourteenth Amendments of the United States Constitution. Having reached this conclusion, the Court will not address Plaintiffs' due process and equal protection claims.

Although the requirement that the voter's registration number be contained in the petition along with the voter's signature and address may once have been an important aid in signature verification and in maintaining the integrity of the electoral process, the electronic and computer revolution, together with general record keeping improvements, have made the old re-

quirement a stifling anachronism. The cumbersome number requirement now has no constitutionally legitimate purpose and only serves to administratively delay and burden those citizens seeking eligible third-party access to the ballot and thus restricts for all citizens important rights guaranteed to them by the Constitution.

ACCORDINGLY, IT IS HEREBY OR-DERED that Judgment for Plaintiffs is GRANTED.

IT IS FURTHER ORDERED that the Defendant, Jack Rains, Secretary of State for the State of Texas, is hereby EN-JOINED from enforcing, applying, or implementing Texas Election Code Sections 141.062(a)(3), 141.063(2)(B), and 181.-006(b)(1), to the extent that said election statutes would require Plaintiffs or any other political party to include the voter registration number of a signer on petitions required by Texas Election Code Section 181.006 for the recognition of a new political party in the State of Texas.