Diane **PILCHER**, Roger Gary, George Meeks and the Libertarian Party of Texas, Plaintiffs–Appellees,

v.

Jack M. **RAINS**, Secretary of State of Texas, Defendant–Appellant.

No. 88–1245.

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1988.

---

Paul D. Rich, Asst. Atty. Gen., San Antonio, Tex., Jim Mattox, Atty. Gen., Austin, Tex., for defendant-appellant.

James C. Linger, Tulsa, Okl., for plaintiffs-appellees.

Before KING, JOHNSON, and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge.

The Texas Secretary of State appeals from an injunction against enforcement of a provision of the Texas Election Code requiring voter registration numbers on minor-party ballot access petitions. Because we hold that the district court applied the correct legal test for an unconstitutional burden on ballot access, and because the factual findings of the district court are not clearly erroneous, we affirm.

## I. BACKGROUND

Texas election law establishes several requirements before a minor party may appear on the ballot. One is that the aspiring party must collect a number of signatures equal to at least one percent of the total votes cast for governor in the last gubernatorial election. Tex.Elec.Code Ann. § 181.006(b)(2) (Vernon 1986). For access to the 1988 ballots, that number is 34,415. Second, none of the signers of the petition may have voted in the same year's Republican or Democratic primaries or have signed the petition of another minor party. Tex.

Elec.Code Ann. § 181.006(g). Finally, the petition must contain each signer's voter registration number. Tex.Elec.Code Ann. § 141.063(2)(B).

In 1974, the United States Supreme Court upheld the general outlines of the Texas ballot access scheme, although the Court did not address the voter registration number requirement. *American Party of Texas v. White*, 415 U.S. 767, 95 S.Ct. 1296, 39 L.Ed.2d 744 (1974). The Libertarian Party challenged the percentage and voter registration number requirements before this Court in 1984. We held that *American Party* had specifically approved of the requirement that voter percentages be based on the last gubernatorial election. *Libertarian Party of Texas v. Fainter*, 741 F.2d 728, 729 (5th Cir.1984). We refused to address the voter registration requirement, because no evidence had been presented on the issue in the district court. *Id.* at 730.

In August 1986, the Libertarian Party brought the instant suit, claiming that the requirement that petitions contain signers' voter registration numbers was an impermissible burden on access to the ballot under the first and fourteenth amendments. The district court held hearings on a preliminary injunction, but declined to issue it because the Libertarian Party did manage to qualify for the 1986 election. However, the court continued to consider the constitutionality of the voter registration number requirement, because the Party would be subject to the same allegedly burdensome requirement in later elections.[1] In February 1988, a bench trial was held, and in March 1988, the district court found that the Libertarian Party had demonstrated that the voter registration number requirement imposed a serious burden on the Libertarian Party's access to the ballot without serving any State interest that could not be as well served by other means. The district court issued an injunction forbidding the Texas Secretary of State from enforcing the requirement. 683 F.Supp.

---

1. The district court held, and we agree, that the controversy in this suit is one "capable of repetition, yet evading review," and hence not moot. *Rosario v. Rockefeller*, 410 U.S. 752, 756 n. 5, 93

S.Ct. 1245, 1249 n. 5, 36 L.Ed.2d 1 (1973); *Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969).

1130. This Court granted an expedited appeal.

## II. DISCUSSION

 The Constitution assigns to the states the initial responsibility for setting the rules governing national elections. U.S. Const., Art. I, §§ 2 & 4. The state has a compelling interest in protecting the integrity of this political process. *Storer v. Brown*, 415 U.S. 724, 732–33, 94 S.Ct. 1274, 1280, 39 L.Ed.2d 714 (1974). However, the first and fourteenth amendments forbid a state from using its regulating power to unnecessarily burden access to the ballot. *Munro v. Socialist Workers Party*, 479 U.S. 189, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986); *Anderson v. Celebrezze*, 460 U.S. 780, 786–87, 103 S.Ct. 1564, 1569, 75 L.Ed. 2d 547 (1983); *Storer*, 415 U.S. at 729, 94 S.Ct. at 1279; *Jenness v. Fortson*, 403 U.S. 431, 440, 91 S.Ct. 1970, 1975, 29 L.Ed.2d 554 (1971); *Moore*, 394 U.S. 814, 89 S.Ct. 1493. The Court recently set out the test for ballot access regulation in *Anderson v. Celebrezze:*

> [The court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment the Court must not only determine the legitimacy and strength of each of those interests, it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provisions is unconstitutional.

460 U.S. at 789, 103 S.Ct. at 1570.

The State argues, first, that the district court erred in failing to consider the "totality" of the Texas minor party registration scheme. Many of the Texas requirements are more lenient than those upheld in other states. For example, Texas requires signatures equal only to one percent of the vot-

ers in the last measuring election, while other states have been allowed to require five percent. *Storer*, 415 U.S. 724, 94 S.Ct. 1274. Texas argues that its relative lenity in some areas should offset its relative severity in others.

However, as the Supreme Court has observed, "The concept of 'totality' is applicable only in the sense that a number of facially valid provisions of the election laws may operate in tandem to produce impermissible barriers to constitutional rights." *Storer*, 415 U.S. at 737, 94 S.Ct. at 1282. Several requirements of an election code may combine to make ballot access excessively burdensome, or a single requirement may do so. For example, if Texas required only one percent of one percent of gubernatorial votes for ballot access, but also imposed another, frankly impossible requirement, the fact that the first requirement was easy would not validate the second. A single unreasonable barrier would suffice to prevent access. In fact, *Anderson* itself overturned Ohio's early filing deadline despite the fact that some of Ohio's other requirements were lenient. 460 U.S. 780, 103 S.Ct. 1564. The district court in the instant case quite properly focused on the ballot regulation at issue: the requirement that petitions contain voter registration numbers.

The Libertarian Party presented uncontroverted evidence, and the district court found, that: (1) less than two percent of petition signers know their voter registration number by heart or carry their voter registration card with them, so as to be able to give the number at the time the petition is signed; (2) petition collectors, as a result, spend from fifty to seventy percent of the petition drive looking up voter registration numbers on county records and adding them to petitions; and (3) no other state requires voter registration numbers on minor party petitions. The district court concluded that these facts sufficed to show a significant burden on Libertarian Party members' first and fourteenth amendment rights.

The State argues that the voter registration number serves the purpose of helping

to assure that all petition signers are registered voters and have not recently participated in other parties. The Secretary of State presented testimony on petition verification procedures. After receiving a petition, Secretary of State employees verify whether the petition contains the minimum number of complete entries. If so, a random sample of entries is taken. These samples are compared with county records to see if the entries are correct and if the signer met the other requirements. These county records are in alphabetical order by voter's name. They are further differentiated by the voter's address and registration number. Thus, the Secretary of State's employees must go through the same process that the petitioners must go through in order to locate the voter registration number. Except in larger counties with computerized voter rolls, access to voter data is through the voter's name. Even in the computerized counties, the voter registration number is not necessary for locating data on a particular voter.

The Secretary of State asserted that a certain number of voters within each county would share common names, such as Mary Brown or Juan Garcia. However, most of these duplicates would be sufficiently distinguished by address. The Secretary of State asserted that two voters of the same name could live at the same address, but presented no evidence that such duplication had ever occurred. Applying the *Anderson* three step test, we conclude, with the district court, that the Libertarian Party demonstrated a significant burden on its access to the ballot from the voter registration number requirement. The State showed that it sought to further a legitimate state interest through the requirement, but it utterly failed to present evidence on the third step of the test, the *necessity* of the requirement. It appears, instead, that the voter registration number is an afterthought in the petition verification process.

The State argues, finally, that the district court impermissibly required that the State accomplish its purposes by using the "least restricted means" available. We need not here decide whether the Supreme Court indeed demands that ballot access regulation always follow the "least restrictive means" path, although some language in *Anderson* points in that direction: " 'If the State has open to it a *less drastic way* of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties.' " *Anderson*, 460 U.S. at 806, 103 S.Ct. at 1579 (quoting *Kusper v. Pontikes*, 414 U.S. 51, 59, 94 S.Ct. 303, 308, 38 L.Ed.2d 260 (1973)) (emphasis added). *See also Dart v. Brown*, 717 F.2d 1491, 1502 (5th Cir.1983), *cert. denied*, 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984).

It is clear that the Supreme Court has consistently required a showing of necessity for significant burdens on ballot access. *Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570; *Storer*, 415 U.S. at 743, 94 S.Ct. at 1285; *White*, 415 U.S. at 780, 94 S.Ct. at 1306. This Court has also required evidence on necessity. *Fainter*, 741 F.2d at 730. The district court in the instant case examined whether the voter registration numbers were necessary to the State's asserted purpose, and found they were not. This finding is not clearly erroneous. Accordingly, the judgment of the district court is

AFFIRMED.