W. Mark COTHAM, Plaintiff,

v.

Antonio O. GARZA, Jr., in his official
capacity as Secretary of State of
Texas, Defendant.

Civ. A. No. H–94–4033.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 27, 1995.

David A. Furlow, Morris & Campbell, Houston, Texas, for plaintiff.

Blake Brodersen, Assistant Texas Attorney General, General Litigation, Austin, Texas, for defendant.

## *MEMORANDUM OF DECISION*

LAKE, District Judge.

Plaintiff seeks a declaratory judgment that § 63.011 of the Texas Election Code violates rights guaranteed to him by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, an injunction restraining defendant from enforcing § 63.011, and reasonable costs for prosecuting this action. Pursuant to the Findings of Fact and Conclusions of Law set forth below, the court concludes that § 63.011 of the Texas Election Code violates rights guaranteed by the First and Fourteenth Amendments to the United States Constitution and that plaintiff is entitled to a permanent injunction restraining the enforcement of § 63.011 and to reasonable costs.

### I. *Procedural Background*

Plaintiff filed this action on November 28, 1994, against Roland W. Kirk in his official capacity as Secretary of State of Texas and Dan Morales in his official capacity as Attorney General of Texas [1] challenging the constitutionality of Texas Election Code § 63.011. Plaintiff argued that the statute, which bans the possession of written communications while marking a ballot, burdens his rights to free speech, equal protection, and due process by infringing his ability to cast meaningful ballots and to associate politically through voting. On January 19, 1995, the court entered a memorandum and order granting defendant's motion for summary judgment and a final judgment dismissing this action with prejudice. In the memorandum and order the court held that the appropriate standard for evaluating plaintiff's claim that § 63.011 burdened his constitutional rights to free speech, equal protection, and due process is the standard announced in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). Applying that standard the court concluded that plaintiff had failed to present competent summary judgment evidence demonstrating that his interest in possessing written materials while marking a ballot outweighed defendant's regulatory interests. The court based its conclusion on § 63.011's exemption of certain sample ballots and on defendant's interpretation of § 63.011 to exempt handwritten notes, both of which the court concluded provided voters the means to cast ballots without fear of forgetting for whom or for what they wished to vote.

After the court entered the January 19, 1995, memorandum and order plaintiff submitted an extensive amount of new evidence demonstrating that the exemptions provided for by the statute as written (use of certain sample ballots) and as applied (use of handwritten notes) are not effective because permissible sample ballots are not generally available to Texas voters and because defendant's interpretation of the statute to prohibit the possession of all written materials other than those composed in the voter's own handwriting is overinclusive and subject to arbitrary and selective enforcement. After evaluating this new evidence the court vacated its final judgment on June 8, 1995, and entered a docket control order containing a schedule for discovery and a trial on the merits. At the August 11, 1995, docket call the parties requested the court to decide the case on an agreed record consisting of affidavits, exhibits, and stipulated facts. The parties have stipulated that should plaintiff prevail a reasonable and necessary attorney's fee, including all expenses for work conducted at the trial level, would be $40,000.[2] Having considered the evidence and the arguments of the parties the court makes the following Findings of Fact and Conclusions of Law.

---

1. On January 24, 1995, the court entered an order granting plaintiff's motion to substitute Antonio O. Garza, Jr., as defendant in place of Roland W. Kirk (Docket Entry No. 21); and on August 3, 1995, the court entered an unopposed order dismissing Morales as a defendant (Docket Entry No. 54).

2. Stipulation 43, Joint Pretrial Order at p. 40, Docket Entry No. 56.

**392**

## II. *Findings of Fact*

1. Plaintiff, W. Mark Cotham, is a registered voter and resident of Spring Valley, Harris County, Texas.

2. Defendant, Antonio O. Garza, is the Secretary of State of Texas and as such is the chief election officer for the State of Texas. Tex.Elec.Code Ann. § 31.001(a) (West 1986). As chief election officer, defendant acts under color of state law in enforcing the election laws of the State of Texas.

3. The Secretary of State "shall obtain and maintain uniformity in the application, operation, and interpretation of [the Texas Election] code and of the election laws outside [the Texas Election] code. In performing this duty, the secretary shall prepare detailed and comprehensive written directives and instructions relating to and based on [the Texas Election] code and the election laws outside [the Texas Election] code. The secretary shall distribute these materials to the appropriate state and local authorities having duties in the administration of these laws." Tex.Elec.Code Ann. § 31.003 (West 1986).

4. "The secretary of state shall assist and advise all election authorities with regard to the application, operation, and interpretation of [the Texas Election] code and of the election laws outside [the Texas Election] code." Tex.Elec.Code Ann. § 31.004(a) (West 1986).

5. The basic electoral unit in Texas is the precinct. A single polling place is required for each precinct. Tex.Elec.Code Ann. § 42.001 (West Supp.1995) and § 43.001 (West 1986).

6. The State of Texas has over 9,000 precincts. All qualified voters, except those casting early or absentee ballots, must vote in the precincts where they live. (Stipulation 29, Joint Pretrial Order at p. 36)

7. The authority responsible for holding an election appoints a presiding election judge and an alternate presiding election judge for each precinct in which an election is held. Tex.Elec.Code Ann. § 32.001(a) (West 1986).

8. The election judge is responsible for the management and conduct of the election at the polling place. Tex.Elec.Code Ann. § 32.071 (West 1986).

9. The election judge is charged with preserving order and preventing breaches of the peace and violations of the Texas Election Code in the polling place and the surrounding area within which electioneering and loitering are prohibited. In performing these duties the election judge has the power of a district judge to enforce order and preserve the peace, including the power to issue an arrest warrant. Tex.Elec.Code Ann. § 32.075 (West 1986).

10. The election judge for each precinct appoints election clerks to assist the judge in the conduct of an election. Tex.Elec.Code Ann. § 32.031(a) (West 1986). The election judge must appoint at least two clerks for each precinct for each election and may appoint as many additional clerks within a prescribed limit as are necessary for the proper conduct of the election. Tex.Elec.Code Ann. § 32.033(a) (West 1986) and (b) (West Supp. 1995).

11. "An election judge or clerk may administer any oath required or authorized to be made at a polling place." Tex.Elec.Code Ann. § 32.074 (West 1986).

12. Texas voters have the opportunity to vote for the president and vice-president of the United States, two United States senators, one member of the United States House of Representatives, the governor of Texas, other state executive officials, three railroad commissioners, one member of the state board of education, one Texas state senator, one Texas state representative, all state judges, and a host of county, city, school district, and special district officials. Tex. Elec.Code Ann. § 52.092 (West 1986 and West Supp.1995). (Stipulation 21, Joint Pretrial Order at p. 33)

13. Texas voters also vote on proposed amendments to the state constitution and on a variety of local propositions. (Stipulations 12, 13, and 14, Joint Pretrial Order at pp. 29–31)

14. Ballots in the state's most populous counties, where a large number of judges must stand for election, routinely present Texas voters with 40 to 100 contested races,

proposed constitutional amendments, and local propositions. (August 3, 1995, Affidavit of Richard Murray at ¶ 10; Stipulations 22 and 28, Joint Pretrial Order at pp. 33 and 35)

15. Because voters are limited in their ability to remember candidates' names and how they wish to vote on various measures, they often need written cues to remind them of how they wish to vote when the ballot presents them with a number of names, amendments, and propositions. (Affidavit of Sherrie Glass at ¶¶ 8(a), (c), and (g))

16. "Written cues" are any of various kinds of written information that voters use to refresh their recollections about various candidates or to assist them in voting, *e.g.*, party affiliation labels on the ballot, a League of Women Voters Voters Guide, the published survey results of the Houston Bar Association, etc. (December 16, 1994, Affidavit of Richard Murray at ¶ 8, attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 7)

17. Tex.Elec.Code § 63.011 (West 1986) states:

§ 63.011. **Written Communication Prohibited**

(a) A voter may not have in his actual possession while marking the ballot a written communication that:

(1) was prepared and furnished to the voter by another person; and

(2) is marked or printed in a way that identifies one or more candidates or measures for which the voter has agreed to vote or has been requested to vote.

(b) A sample ballot that has not been marked or printed in a way that identifies candidates or measures for which to vote, that is obtained by the voter from a newspaper or another person, and that the voter marks himself is one example of a written communication that is not prohibited under Subsection (a).

(c) An election officer may not accept a voter for voting if the officer knows that the voter has actual possession of a communication prohibited by Subsection (a) at the time he offers to vote.

(d) An election officer may require a voter to answer under oath whether the voter has actual possession of a communication prohibited by Subsection (a). If a voter has a prohibited communication, the voter may not receive an official ballot until the voter delivers the communication to the election officer.

(e) A person commits an offense if the person violates Subsection (a). The offense is a Class C misdemeanor.

18. A Class C misdemeanor is punishable by "a fine not to exceed $500." Tex.Penal Code Ann. § 12.23 (West Supp.1995).

19. Neither plaintiff nor any other Texas voter has ever been prosecuted for violating § 63.011. (Plaintiff's Offer of Certain Answers to Interrogatories and Responses to Requests for Admission by Defendant at p. 2)

20. Texas and Arkansas are the only states that prohibit the possession of written communications while marking a ballot. (Stipulation 44, Joint Pretrial Order at p. 40)

21. The only expressly recognized exception to § 63.011(a)'s ban on the possession of written communications while marking a ballot is stated in § 63.011(b), which allows a voter to refer to certain types of sample ballots that the voter has marked. Tex.Elec. Code Ann. § 63.011 (West 1986).

22. For elections ordered by the governor or a county authority, official ballots are prepared by the county clerk; for primary elections, official ballots are prepared by the county chairman of the political party holding the primary; for elections ordered by a city authority, official ballots are prepared by the city secretary; and for elections ordered by a political subdivision other than a county or a city, official ballots are prepared either by the secretary or by the presiding officer of the political subdivision. Tex.Elec.Code Ann. § 52.002 (West 1986).

23. The only ballots routinely available to Texas voters before an election are specimen ballots that are to be made available for public inspection either in the office of the county clerk or in the office of the authority responsible for having the official ballots prepared. Tex.Elec.Code Ann. § 52.007 (West

**394**

1986); 1 Tex.Admin.Code § 81.41 (West 1995).

24. The authority responsible for procuring election supplies may have a supply of sample ballots printed but is not required to do so. Tex.Elec.Code Ann. § 52.008(a) (West 1986); 1 Tex.Admin.Code § 81.40 (West 1995). If sample ballots are printed they are to be distributed for use in the election as directed by the authority responsible for procuring election supplies. Tex. Elec.Code Ann. § 52.008(c) (West 1986).

25. Only a limited number of sample ballots are printed before Texas elections and those are printed principally for the use of election judges and clerks who display them at the polling places. (Affidavit of John Willingham, Administrator of Elections for Williamson County, Texas, at ¶ 21)

26. "If sample ballots are provided for a polling place, an election officer shall post a sample ballot in one or more locations in the polling place where it can be read by persons waiting to vote." Tex.Elec.Code Ann. § 62.012 (West 1986).

27. In Harris County two sample ballots are routinely posted at each polling place, one at the door and one at the place where voting actually occurs. (Affidavit of Gerald Furlow at ¶¶ 6–7; Affidavit of Carla S. Cawlfield at ¶¶ 6–7) There is no mechanism in Harris County for printing and delivering sample ballots to precincts for use by voters who wish to use them. (Affidavit of Tony J. Sirvello, III, Administrator of Elections for the Harris County Clerk, at ¶ 21)

28. The only sample ballot available for inspection prior to the May 6, 1995, election in plaintiff's hometown of Spring Valley, Texas, was posted at the city hall polling place. The sample ballot could not be duplicated or removed from the building. (Affidavit of W. Mark Cotham at ¶ 15)

29. Defendant makes no effort to distribute sample ballots to potential voters and has no specific knowledge of any efforts made by Texas counties or other entities to distribute sample ballots to potential voters. Although sample ballots are contemplated by the Texas Election Code, no governmental entity has the duty to distribute sample ballots to Texas

voters. (Plaintiff's Offer of Certain Answers to Interrogatories and Responses to Requests for Admission by Defendant at p. 3; Defendant's Memorandum of Authorities at ¶ 30 included in Joint Pretrial Order)

30. Although voters in Harris County can potentially obtain sample ballots from four sources: the county, newspapers, private organizations, and political parties and candidates, none of these sources provide voters with ready access to permissible sample ballots.

(a) Harris County does not have a budget, a mechanism, or the staff for printing and delivering sample ballots to voters who wish to use them.

(b) Sample ballots published in local newspapers can be tainted by the presence of election-oriented material on their backsides, as was the sample ballot published in the *Houston Chronicle* prior to the November 1994 election.

(c) Although some private organizations, such as the Tenneco Government Affairs Department, and various political interest groups attempt to make sample ballots available to the public, the large number of precincts and the large number of precinct-specific races (e.g., justice of the peace, state representative, and state senator) make the task of providing accurate and complete sample ballots to all voters who seek them almost impossible for such organizations.

(d) Sample ballots prepared by political parties and candidates are often tainted by the practice of highlighting the names of a particular party's candidates.

(Affidavit of Tony J. Sirvello, III, at ¶¶ 12–26)

31. Sample ballots are not wholly unavailable to Texas voters. In addition to sample ballots sometimes distributed in Harris County by the Tenneco Government Affairs Department, the sample ballot published in the 25,000 copies of the *Link Letter* (a political newsletter) that appeared before the November 1994 election satisfied § 63.011's statutory requirements. (Affidavit of Terry Lowry at ¶ 4)

32. Defendant interprets § 63.011 to allow voters while marking their ballots to possess handwritten notes that they have prepared. (Affidavit of Tom Harrison, Deputy Assistant Secretary of State for Elections for the State of Texas, at ¶ 7)

33. Preparing a handwritten list of all the candidates and measures for which a voter wishes to vote can take up to an hour. (Affidavit of Carla S. Cawlfield at ¶ 12)

34. Defendant interprets § 63.011 to prohibit a voter from carrying any written communication prepared by someone other than the voter into the voting booth if the communication can be construed as requesting a voter to vote for or against a certain candidate or issue. According to this interpretation it is against the law for voters to bring into a voting booth sample ballots published in a newspaper containing election-oriented materials on their backsides (*e.g.*, the sample ballot published in the *Houston Chronicle* before the November 1994 election), newspaper endorsements of candidates, the League of Women Voters Voters Guide, Houston Bar Association preference polls, materials from political interest groups, or other printed materials that could be interpreted as recommending a candidate's election. (Affidavit of Tony J. Sirvello, III, at ¶ 29; Affidavit of Tom Harrison at ¶ 3; Defendant's Memorandum of Authorities at ¶ 29 included in Joint Pretrial Order)

35. Defendant recommends that county election officials enforce § 63.011 to exclude all voters' guides from the voting booth because he believes that this interpretation is required to achieve the uniform enforcement of the statute, to prevent purportedly nonpartisan publications with skewed responses from appearing in the polling place, and to minimize the amount of time each voter takes to vote. (Affidavit of Tom Harrison at ¶¶ 4, 5, and 8; Defendant's Memorandum of Authorities at ¶¶ 28 and 31 included in Joint Pretrial Order)

36. Defendant's position is that "because information in the [League of Women Voters] Voters Guide could be construed or interpreted to suggest how a voter should vote, the guide should not be allowed in the voting booth" but that "[t]he final determination of whether the guide will be allowed in the polling place is one that must be made by local officials." (Letter from Roland W. Kirk, Secretary of State of Texas, to Lori Donahue Vaske, Attachment No. 2 to Affidavit of Lori Donahue Vaske)

37. Defendant leaves the final determination of which written materials will be excluded from the voting booths at individual polling places to local election officials. (Defendant's Memorandum of Authorities at ¶ 28 included in Joint Pretrial Order)

38. Plaintiff intends to vote in future elections and has a reasonable apprehension that Tex.Elec.Code § 63.011 will be applied to prevent him and others like him from voting with the assistance of written information prepared by others.

### III. *Conclusions of Law*

Plaintiff claims that § 63.011 of the Texas Election Code violates his rights to free speech, equal protection, and due process as guaranteed by the First and Fourteenth Amendments. Specifically, plaintiff argues that § 63.011 violates his right to free speech and due process by restraining speech on the basis of its content, by curtailing his right to political association, and by chilling his exercise of the right to vote, and that § 63.011 violates his right to equal protection by discriminating against certain persons and certain forms of speech. Plaintiff also argues that § 63.011 is unconstitutionally void-for-vagueness because it fails to notify either voters of ordinary intelligence or local election officials of what conduct it prohibits and because its enforcement relies not on any clear standard but on the unguided opinions of thousands of local election officials.

Defendant argues that § 63.011 does not restrict plaintiff's rights to free speech, equal protection, or due process and that even if it does, its restrictions are permissible because the voting booth is not a traditionally public forum and because the restrictions imposed by § 63.011 are narrowly tailored to serve the compelling state interests of protecting the integrity of the election process and aiding the orderly and timely administration of ballots on election day. Having considered

the parties' arguments and the applicable authorities, the court makes the following conclusions of law.

## A. First and Fourteenth Amendment Claims

■ Citing *McIntyre v. Ohio Elections Comm'n*, —— U.S. ——, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995), plaintiff argues that § 63.011 violates rights guaranteed by the First and Fourteenth Amendments because it is a content-based prohibition on core political speech in a public forum that must be analyzed under the standard of strict or exacting scrutiny. A statute regulating political speech in a public forum is subject to strict scrutiny; it cannot survive constitutional muster unless the state demonstrates that it is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that interest. *Burson v. Freeman*, 504 U.S. 191, 198, 112 S.Ct. 1846, 1851, 119 L.Ed.2d 5 (1992) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)). Citing *Anderson*, 460 U.S. at 780, 103 S.Ct. at 1564, defendant argues that § 63.011 does not regulate political speech but instead regulates the mechanics of the voting process. A statute regulating the mechanics of the voting process is subject to a more flexible analytical process that requires strict scrutiny only if the statute imposes severe burdens on plaintiff's First and Fourteenth Amendment rights. *Burdick*, 504 U.S. at 433, 112 S.Ct. at 2063. In the alternative, defendant argues that § 63.011 is not subject to strict scrutiny because the voting booth is not a traditionally public forum.

■ Because the function of the voting process is to select public officials and not to provide a general forum for political expression, *Burdick*, 504 U.S. at 438, 112 S.Ct. at 2066 (citing *Storer v. Brown*, 415 U.S. 724, 730, 734, 94 S.Ct. 1274, 1279, 1281, 39 L.Ed.2d 714 (1974)), and because § 63.011 prohibits the possession of written communications only during the short period while voters mark their ballots, the court concludes that § 63.011 is an election code provision governing the mechanics of the voting process like the statutes at issue in *Anderson* (early filing deadlines) and *Burdick* (ban on write-in voting), rather than a content-based restriction on core political speech like the statute at issue in *McIntyre* (temporally unrestricted ban on distributing anonymous campaign literature).[3] Accordingly, the court concludes that § 63.011's constitutionality must be analyzed under the more flexible standard articulated in *Anderson* and applied in *Burdick*. *See also Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986) (applying *Anderson* analysis in action challenging validity of Connecticut's closed primary law); *Pilcher v. Rains*, 853 F.2d 334 (5th Cir.1988), *aff'g* 683 F.Supp. 1130 (W.D.Tex.1988) (applying *Anderson* analysis to Texas statute requiring voter registration numbers on minority-party ballot access petitions).[4]

■ State statutes regulating the mechanics of the electoral process impact the fundamental constitutional rights to vote and to associate politically that are protected by the First and Fourteenth Amendments. *Anderson*, 460 U.S. at 786, 103 S.Ct. at 1569.[5]

3. In *Burdick* both J. White speaking for the majority and J. Kennedy speaking for the dissent agreed that the purpose of casting, counting, and recording votes is to elect public officials, not to serve as a general forum for political expression. 504 U.S. at 438 and 444, 112 S.Ct. at 2066 and 2069.

4. Even were the court to conclude that § 63.011 is a content-based restriction on core political speech, it would not conclude that the statute was subject to strict-scrutiny analysis because unlike the statute at issue in *McIntyre*, § 63.011 does not regulate political speech in a public forum. Although voting booths are places where voters communicate their choices of candidates and propositions, they are not public forums. *Burson*, 504 U.S. at 215, 112 S.Ct. at 1860 (Scalia, J., concurring) ("the environs of a polling place, on election day, are simply not a 'traditional public forum'"). *See also Perry*, 460 U.S. at 48 n. 9, 103 S.Ct. at 957 n. 9 (citing *United States Postal Service v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 128, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981) (personal mailbox not a public forum)).

5. As in *Anderson*, the court bases its conclusions directly on the First and Fourteenth Amendments. Because the court finds these conclusions dispositive, a separate Equal Protection

The rights to vote and to associate for political purposes through the ballot are not absolute, however. *Burdick*, 504 U.S. at 433, 112 S.Ct. at 2063 (citing *Munro v. Socialist Workers Party*, 479 U.S. 189, 192, 107 S.Ct. 533, 536, 93 L.Ed.2d 499 (1986)). The Constitution allows a state to prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, and this power extends to a state's control over its own elections. *Burdick*, 504 U.S. at 433, 112 S.Ct. at 2063 (citing *Sugarman v. Dougall*, 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853 (1973), and *Tashjian*, 479 U.S. at 217, 107 S.Ct. at 550). In *Anderson* the Court recognized that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." 460 U.S. at 786–791, 103 S.Ct. at 1569–1570 (quoting *Storer*, 415 U.S. at 730, 94 S.Ct. at 1279).

▉ To achieve these necessary objectives states have enacted election codes that impact to some extent a citizen's right to vote and to associate politically through the vote. *Anderson*, 460 U.S. at 788, 103 S.Ct. at 1570. Recognizing that constitutional challenges to specific provisions of a state's election laws cannot be resolved by any litmus-paper test, *Anderson* directed courts to employ a three-step analysis similar to that used in ordinary litigation:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It must then identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

Clause analysis need not be undertaken. 460

460 U.S. at 788, 103 S.Ct. at 1570. *See also Burdick*, 504 U.S. at 433, 112 S.Ct. at 2063; *Tashjian*, 479 U.S. at 213, 107 S.Ct. at 548; *Pilcher*, 853 F.2d at 336.

### 1. *Character and Magnitude of Asserted Injuries*

▉ The rigorousness of the court's inquiry into the propriety of § 63.011 depends upon the extent to which it burdens the plaintiff's First and Fourteenth Amendment rights. If the burdens imposed on those rights are severe, the statute is subject to strict scrutiny, *i.e.*, it must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 433, 112 S.Ct. at 2063. If the statute only imposes " 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.*, at 433–436, 112 S.Ct. at 2063–2064 (quoting *Anderson*, 460 U.S. at 786–790, 103 S.Ct. at 1569–1570).

Plaintiff has presented uncontroverted evidence that (1) ballots in Texas' most populous counties routinely present voters with more than forty contested races, constitutional amendments, and propositions; (2) Texas voters are limited in their ability to remember more than a few candidates' names and how they would like to vote on more than a few measures; (3) because Texas voters cannot remember all of the candidates and measures for which they wish to vote, they need written cues to remind them of the way they wish to vote when presented with long ballots; (4) the only expressly recognized exception to § 63.011(a)'s ban on the possession of written communications while marking a ballot is that appearing in § 63.011(b), which allows voters to refer to certain sample ballots that they have marked themselves; (5) although sample ballots are contemplated by the Texas Election Code, no governmental entity has the duty to distribute sample ballots to the Texas electorate; (6) defendant makes no effort to distribute sample ballots to potential voters, has no established program to distribute sample ballots to potential voters, and has no specific knowledge of any

U.S. at 786 n. 7, 103 S.Ct. at 1569 n. 7.

efforts made by Texas counties or other entities to distribute sample ballots to potential voters; (7) sample ballots published in newspapers and prepared by private entities are often prohibited by § 63.011 because of the presence of political advertising, i.e., the names of certain candidates are highlighted or the backsides of the sample ballots contain campaign-related material; (8) defendant interprets § 63.011 to encompass all other written materials except notes made in a voter's own handwriting; and (9) preparing a handwritten list of all the candidates and measures for which a voter wishes to vote can take up to an hour.

Plaintiff's uncontroverted evidence leads the court to conclude that Texas voters in the state's most populous counties are sometimes unable to cast informed, meaningful votes for the candidates and measures of their choice without the ability to possess written communications while marking their ballots. Due to the restrictions imposed by § 63.011, the only written communications that voters may possess while marking ballots are certain sample ballots and handwritten notes. Although the general lack of permissible sample ballots and the time required to prepare handwritten notes inconvenience Texas voters and burden their rights to cast informed, meaningful votes, § 63.011 does not preclude the possession of all written communications while marking a ballot. Instead, the statute forces Texas voters who wish to possess written communications while marking their ballots to act in a timely fashion by deciding for whom and for what they wish to vote and either obtaining and marking a permissible sample ballot or preparing their own handwritten notes. Because plaintiff's evidence does not establish that permissible sample ballots are never available or that preparing handwritten lists of candidates and measures is unduly burdensome, the court concludes that § 63.011's prohibition on the possession of written communications "marked or printed in a way that identifies one or more candidates or measures for which the voter has agreed to vote or has been requested to vote" imposes limited, not severe, burdens on voters' rights to make free choices and to

associate politically through the vote. *Burdick,* 504 U.S. at 438, 112 S.Ct. at 2066 ("Reasonable regulation of elections *does not* require voters to espouse positions that they do not support; it *does* require them to act in a timely fashion if they wish to express their views in the voting booth." (emphasis in original)).

### 2. *State Interests*

Because the court concludes that the burdens to plaintiff's First and Fourteenth Amendment rights to vote and to associate politically through the vote imposed by § 63.011 are limited rather than severe, defendant does not have to establish a compelling interest for the court to conclude that the statute meets constitutional muster. *Burdick,* 504 U.S. at 438, 112 S.Ct. at 2066. Defendant need only demonstrate that the state's legitimate interests "make it necessary to burden the plaintiff's rights." *Burdick,* 504 U.S. at 433, 112 S.Ct. at 2063 (quoting *Anderson,* 460 U.S. at 786–790, 103 S.Ct. at 1569–1570). Defendant argues that the statutory ban on possessing written communications while marking ballots is a necessary part of the state's regulatory scheme because it protects the integrity of the electoral process by preventing voter intimidation and fraud and because it aids the orderly and prompt administration of ballots on election day by minimizing the time voters spend in the voting booth.[6]

### a. *Are the state's interests legitimate?*

 The Supreme Court has repeatedly recognized that a state's interest in protecting its citizens' right to vote in elections conducted with integrity and reliability is not only a legitimate but a compelling interest. *Burson,* 504 U.S. at 198–201, 112 S.Ct. at 1851–1852 (citing *Eu v. San Francisco County Democratic Cent. Comm.,* 489 U.S. 214, 228–232, 109 S.Ct. 1013, 1023–1024, 103 L.Ed.2d 271 (1989)). *See also Anderson,* 460 U.S. at 788, n. 9, 103 S.Ct. at 1570, n. 9 (stating that the Court has upheld generally applicable and even-handed restrictions that protect the integrity and reliability of the electoral process itself). In recognizing the legitimacy of a state's interests in conducting

---

**6.** Defendant's Memorandum of Authorities at ¶¶ 26–34 included in the Joint Pretrial Order.

elections with integrity and reliability untainted by voter intimidation and fraud, the Court has upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls. *Burdick,* 504 U.S. at 438, 112 S.Ct. at 2066 (citing *Munro,* 479 U.S. at 198–202, 107 S.Ct. at 539–540). *See also Burson,* 504 U.S. at 205, 209–213, 112 S.Ct. at 1855, 1857–1858 (holding that ban on electioneering within 100 feet of the entrance to a polling place survives strict scrutiny analysis); *Schirmer v. Edwards,* 2 F.3d 117 (5th Cir.1993), *cert. denied sub nom. Recall '92, Inc. v. Edwards,* —— U.S. ——, 114 S.Ct. 1396, 128 L.Ed.2d 70 (1994) (upholding Louisiana's ban on electioneering within 600–foot radius of polling places). Accordingly, the court concludes that defendant's desire to protect the integrity of the electoral process by preventing voter intimidation and fraud states a legitimate and a compelling governmental interest.

■ Defendant does not cite and the court has not found any precedent recognizing the state's interest in minimizing the time voters spend in the voting booth as a legitimate state interest. Defendant asserts that if extensive voters' guides are allowed in the voting booth the time each voter takes to vote would "probably increase" and that if some voters spend more time marking their ballots, other voters will be discouraged from voting. (Affidavit of Tom Harrison at ¶¶ 8–10) As plaintiff points out, such concerns can be remedied by using additional voting booths.[7] Defendant's claim that § 63.011 advances a legitimate state interest by limiting the time citizens take to vote is essentially an economic claim that absent § 63.011 the cost of administering elections might increase be-

cause of the need for more voting booths to accommodate the additional time voters may spend voting. The Supreme Court has refused to recognize the possibility of future increases in the cost of administering elections as a state interest sufficient to justify an infringement on First Amendment rights. *Tashjian,* 479 U.S. at 217, 107 S.Ct. at 550.[8] The court concludes that in this case defendant's interest in aiding the orderly and prompt administration of ballots by minimizing the time voters spend marking their ballots is an insubstantial one.

### b. *Is § 63.011 necessary to advance the state's legitimate interests?*

In addition to demonstrating that § 63.011 is intended to advance legitimate governmental interests, defendant must also show that the state's "interests make it necessary to burden the plaintiff's rights." *Burdick,* 504 U.S. at 433, 112 S.Ct. at 2063 (quoting *Anderson,* 460 U.S. at 788, 103 S.Ct. at 1570); *Pilcher,* 853 F.2d at 337. Defendant argues that § 63.011 is necessary to protect the integrity of the electoral process by preventing voter intimidation and fraud and to aid the orderly and prompt administration of ballots on election day. The only evidence presented by the defendant to show that § 63.011 advances these interests is the affidavit of Tom Harrison, Deputy Assistant Secretary of State for Elections for the State of Texas.

### (1) *Preventing Campaign Materials from Appearing in the Polling Places*

Harrison states that § 63.011 protects the integrity of the electoral process by preventing campaign materials from appearing in the polling place. He does not state—and

---

7. Affidavit of Tony J. Sirvello, III, at ¶ 41, stating that "[i]n the November 8, 1994 election in which Plaintiff ... voted, Harris County used approximately 8,300 of the 9,800 voting booths it keeps available for elections. If Harris County voters take longer to cast their ballots than they currently do because they spend additional time reading, *e.g.,* League of Women Voters 'Voters Guides' in their voting booths (which I do *not* believe will be the case), Harris County could respond by providing additional voting booths, in each precinct, from those currently held in reserve (or for minimal expenditures, in addition to those currently in reserve)."

8. In *Tashjian* the state argued that its closed primary law should be upheld because its invalidation would increase the state's administrative burden by requiring the purchase of more voting machines, the training of additional poll workers, and the printing of additional ballot materials. Assuming the factual accuracy of the state's contentions, the Court concluded that possibility for future increases in the cost of administering the election system was not a sufficient basis for upholding a statute that burdened First Amendment rights.

the court is not persuaded—that § 63.011 is *necessary* to achieve this result. The display and distribution of campaign materials in the polling place are not prohibited by § 63.011 but by the state's anti-electioneering statutes. Tex.Elec.Code Ann. § 61.001 (West 1986) (loitering); § 61.003 (West 1986) (prohibition against electioneering within 100 feet of the entrance to a polling place); § 61.008 (West 1986) (ban against indicating to a voter by word, sign, or gesture how to vote or how not to vote); § 61.010 (West Supp.1995) (ban against wearing a badge, insignia, or button relating to any political cause or candidate within 100 feet of the entrance to a polling place). Consequently, while the abrogation of § 63.011 would allow voters to bring written materials with them to the polling place, it would not allow voters to share, exchange, or display campaign materials because these activities could still be prevented through enforcement of the state's anti-electioneering statutes. The court is therefore not persuaded that the burdens imposed on plaintiff's constitutional rights by § 63.011 are needed to protect the integrity of the electoral process.

### (2) Fostering Orderly and Prompt Voting

Harrison also states that § 63.011 is needed to aid the orderly and prompt administration of ballots on election day because if written materials were allowed in the voting booth the time voters take to mark their ballots would probably increase. The court has already concluded that limiting the amount of time voters take to vote is an insubstantial state interest. Moreover, Harrison does not assert—and the court is not persuaded—that § 63.011 is actually necessary to prevent an increase in the time voters spend marking their ballots. Tony J. Sirvello, III, Election Administrator of Harris County, Texas, stated that he does not believe that absent § 63.011 the time voters spend voting will increase because most voters will not use written materials while marking their ballots even if permitted and because the use of written materials will allow voters to organize their thoughts and vote more quickly.[9] Sirvello also stated that even if the time voters spend voting did increase Texas counties could address the problem by making additional voting stations available.[10] John Willingham, an election administrator who has worked in both McLennan and Williamson Counties, also stated that in his experience the use of written materials allows voters to organize their thoughts and vote more speedily.[11] Moreover, Willingham stated that enforcement of § 63.011 sometimes leads to delay and confusion caused by angry confrontations between voters who believe that they can use written materials during the voting process and election officials who enforce the statute by requiring them to mark their ballots without using written materials.[12] Given the difficulty that voters have remembering the numerous candidates and issues for which they wish to vote, the evidence before the court establishes that the amount of time voters take to mark their ballots may decrease rather than increase if they are allowed to possess written communications currently prohibited under defendant's interpretation of § 63.011. Therefore, even assuming that limiting the amount of time citizens spend voting were more than an insubstantial state interest, the court is not persuaded that the prohibition imposed by § 63.011 is needed to advance that interest.

### 3. *Conclusion*

Defendant has failed to present any evidence demonstrating that the restrictions imposed by § 63.011 on the rights of plaintiff and other Texas voters to cast meaningful votes and to associate politically through the vote are necessary either to advance the legitimate state interest of preserving the integrity of the electoral process by preventing voter intimidation and fraud or to advance the insubstantial state interest of limit-

---

9. Affidavit of Tony J. Sirvello, III, at ¶ 39.

10. *Id.* at ¶ 41.

11. Affidavit of John Willingham at ¶¶ 23–29, describing how as election administrator for the McLennan County and City of Waco elections in 1987 he directed election judges and clerks to distribute copies of the League of Women Voters Voters Guide to voters waiting to vote in an effort to reduce the time that they spent marking their ballots.

12. Affidavit of John Willingham at ¶ 20.

ing the amount of time voters spend marking their ballots. The Supreme Court and the Fifth Circuit have consistently refused to uphold election statutes found to impose even limited burdens on Constitutional rights without a showing of necessity. *Burdick*, 504 U.S. at 433, 112 S.Ct. at 2063; *Anderson*, 460 U.S. at 788, 103 S.Ct. at 1570; *Pilcher*, 853 F.2d at 337. The court concludes that the state's asserted interests do not outweigh the interests of plaintiff and other Texas voters to cast meaningful ballots and to associate politically by possessing written communications while marking their ballots.[13]

**B. Void–for–Vagueness Claim**

Plaintiff argues that § 63.011 is unconstitutionally vague because its prohibition against written communications that identify candidates or measures for which the voter has been "requested to vote" is subject to discriminatory enforcement and fails to provide fair notice. Both the Supreme Court and the Fifth Circuit have stated that this issue is better suited as a defense to a criminal prosecution than as an argument for invalidating a statute in a civil proceeding. *Burson*, 504 U.S. at 209 n. 13, 112 S.Ct. at 1857 n. 13; *Schirmer*, 2 F.3d at 124 (stating that the void-for-vagueness argument is an "as applied" challenge that should be made by an individual prosecuted for such conduct). Because neither plaintiff nor any other Texas voter has been prosecuted for violating § 63.011, and because the court has concluded that plaintiff's interest in possessing written communications while marking a ballot outweigh the state's asserted interests in limiting those communications to certain sample ballots and handwritten notes, the court need not reach this issue.

To the extent that any Finding of Fact is more properly characterized as a conclusion of law the court **ADOPTS** it as such. To the extent that any Conclusion of Law is more properly characterized as a finding of fact the court **ADOPTS** it as such.

13. Harrison also states that defendant's broad interpretation of § 63.011 to bar all written communications other than certain sample ballots and handwritten notes is needed to encourage the statute's uniform enforcement. The court does not address this statement separately be-

*FINAL JUDGMENT AND PERMANENT INJUNCTION*

Pursuant to the Findings of Fact and Conclusions of Law entered herewith, the court **DECLARES** that Texas Election Code § 63.011 violates rights guaranteed to plaintiff by the First and Fourteenth Amendments to the United States Constitution.

The court **PERMANENTLY ENJOINS** Antonio O. Garza, Secretary of State of Texas, his officers, agents, and employees from enforcing Texas Election Code § 63.011.

The court **ADJUDGES** that plaintiff recover from defendant $40,000.00 for attorney's fees and costs.

This is a **FINAL JUDGMENT.**

cause need for the statute's uniform enforcement is irrelevant to defendant's argument that the statute itself is needed to advance the state's asserted interests of protecting the integrity of the electoral process and fostering orderly and prompt voting.