

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00003-CV

IN RE JAMES PIKL

Original Mandamus Proceeding

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

This is an original mandamus proceeding brought by relator, James Pikl, a Republican candidate for Court of Appeals Justice for the Fifth Appellate District of Texas, Place 12.[1] Pikl seeks a writ of mandamus from this Court ordering Organization Director of the Republican Party of Texas Brandon Moore to decertify real party in interest, William Randall Johnson, as a candidate for Court of Appeals Justice for the Fifth Appellate District of Texas, Place 12, for placement on the 2018 Republican primary election ballot. We deny Pikl's petition because the mandamus record provided (1) does not show that Moore has failed to comply with a duty imposed by the Texas Elections Code and (2) creates fact issues that cannot be resolved by mandamus.

## I.    Standard of Review and Issue Presented

This Court may issue a writ of mandamus to compel the performance of a ministerial act, including "any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer." TEX. ELEC. CODE ANN. § 273.061 (West 2003). "An act is ministerial when the law clearly spells out the duty to be performed . . . with sufficient certainty that nothing is left to the exercise of discretion." *In re Woodfill*, 470 S.W.3d 473, 478 (Tex. 2015) (orig. proceeding). However, it is well established Texas law that an appellate court may not deal with disputed areas

---

[1]Originally appealed to the Fifth Court of Appeals in Dallas, this appeal was transferred to this Court by order of the Supreme Court of Texas. We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue.

of fact in an original mandamus proceeding. *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex. 1990) (orig. proceeding).

Johnson's petition was required to contain 250 valid signatures. *See* TEX. ELEC. CODE ANN. §§ 141.062, 172.021(e) (West Supp. 2017). The crux of Pikl's argument is premised on his belief that the petition submitted by Johnson did not contain the required number of valid signatures in support of his application for inclusion on the Republican Primary election ballot. Thus, Pikl contends that Moore failed to comply with a duty imposed by law by certifying Johnson's application.

Specifically, Pikl argues that a vast majority of signatures on the petition were invalid because circulators failed to include voter registration numbers for each signatory. According to Pikl, the circulators would be unable to confirm that the petition was signed by a registered voter without voter registration numbers. Thus, he argues, Moore should have rejected Johnson's application. Pikl further asserts that his review of Johnson's ballot petitions, when compared with the GOP Data Center database of voter registration records (not county registration records), led him to conclude that only 237 signatories were properly registered voters. In order to examine Pikl's claims, we review the requirements of the Texas Election Code.

## II. Requirements of the Texas Election Code

In relevant part, Section 141.063 of the Texas Election Code provides that a signature on a ballot petition is valid if:

(1)    . . . the signer, at the time of signing, is a registered voter of the territory from which the office sought is elected or has been issued a registration

3

certificate for a registration that will become effective in that territory on or before the date of the applicable election;

      (2)     the petition includes the following information with respect to each signer:

            (A)     the signer's residence address;

            (B)     the signer's date of birth or the signer's voter registration number and, if the territory from which signatures must be obtained is situated in more than one county, the county of registration;

            (C)     the date of signing; and

      (D)     the signer's printed name; and

      (3)     the part of the petition in which the signature appears contains the affidavit required by Section 141.065.

TEX. ELEC. CODE ANN. § 141.063 (West 2010). The affidavit referred to in Section 141.063 is that of the circulator, who has certain duties under the Texas Election Code. The circulator must:

      (1)     before permitting a person to sign, point out and read to the person each statement pertaining to the signer that appears on the petition;

      (2)     witness each signature;

      (3)     ascertain that each date of signing is correct; and

      (4)     before the petition is filed, verify each signer's registration status and ascertain that each registration number entered on the petition is correct.

TEX. ELEC. CODE ANN. § 141.064 (West 2010). The circulator indicates compliance with these requirements by executing the affidavit required by Section 141.065, stating:

      (a)     Each part of a petition must include an affidavit of the person who circulated it, executed before a person authorized to administer oaths in this state, stating that the person:

4

(1)     pointed out and read to each signer, before the petition was signed, each statement pertaining to the signer that appears on the petition;

(2)     witnessed each signature;

(3)     verified each signer's registration status; and

(4)     believes each signature to be genuine and the corresponding information to be correct.

TEX. ELEC. CODE ANN. § 141.065(a) (West Supp. 2017).

Once the required number of signatures is obtained, the candidate's application is submitted to the proper authority. "[T]he authority with whom the application is filed shall review the application to determine whether it complies with the requirements as to form, content, and procedure that it must satisfy for the candidate's name to be placed on the ballot." TEX. ELEC. CODE ANN. § 141.032(a) (West Supp. 2017). "If an application is accompanied by a petition, the petition is considered part of the application, and the review shall be completed as soon as practicable after the date the application is received by the authority." TEX. ELEC. CODE ANN. § 141.032(c) (West Supp. 2017). "Unless the petition is challenged, the authority is only required to review the petition for facial compliance with the applicable requirements as to form, content, and procedure." *Id.* Additionally, if a petition contains a circulator's affidavit that complies with Section 141.065(a), "for the purpose of determining whether the petition contains a sufficient number of valid signatures, the authority with whom the candidate's application is filed may treat as valid each signature to which the affidavit applies, without further verification, unless proven otherwise." TEX. ELEC. CODE ANN. § 141.065(b) (West Supp. 2017).

5

### III.    Analysis

Here, the mandamus record indicates that Johnson exceeded the number of required signatures.  The issue is whether a sufficient number of the signatures are valid.  Under a prior version of Section 141.063(2)(B), signatories were required to include their date of birth *and* their voter registration number.  *See* Act of May 28, 1997, 75th Leg., R.S., ch. 1349, § 52, 1997 Tex. Gen. Laws 5080, 5091 (amended 2005) (current version at TEX. ELEC. CODE § 141.063(2)(B) (West 2010)).  In 2005, this Section was amended to require either the signatory's date of birth *or* the signatory's voter registration number.  *See* Act of May 25, 2005, 79th Leg., R.S., ch. 726, § 1, 2005 Tex. Gen. Laws 1751, 1752 (codified at TEX. ELEC. CODE § 141.063(2)(B)).  The change in the statutory language was made in direct response to "State and federal court cases . . . [which] held that petitions can require date of birth or voter registration number, but not both, for the purposes of validating the petition signatures."  House Comm. on State Affairs, Tex. H.B. 1509, 79th Leg., R.S. (2005); *see Pilcher v. Rains*, 853 F.2d 334, 337 (5th Cir. 1988) (concluding that the requirement that correct voter registration numbers be listed with signatures was unconstitutional on the record presented as applied to a Libertarian party candidate).[2]

Pikl acknowledges that a signatory was not required to include his voter registration number if he provided his date of birth, and the ballot petition paperwork demonstrates that each

---

[2]In *Pilcher*, the Fifth Circuit wrote:

> [Texas] county records are in alphabetical order by voter's name.  They are further differentiated by the voter's address and registration number. . . . Except in larger counties with computerized voter rolls, access to voter data is through the voter's name.  Even in the computerized counties, the voter registration number is not necessary for locating data on a particular voter. . . . [C]ommon names . . [creating] duplicates [can] be sufficiently distinguished by address. *Pilcher*, 853 F.2d at 337.

signatory that did not include a voter registration number provided a date of birth. *See* TEX. ELEC. CODE ANN. § 141.063(2)(B). Nevertheless, Pikl asserts that the circulator was required to affix each signatory's voter registration number on the petition ballots before submitting them to Moore. Because the circulator did not do so, Pikl argues that Moore had a ministerial duty to reject the petition ballots.

In support, Pikl cites Section 141.064 of the Texas Election Code. However, that Section only requires that the circulator, "before the petition is filed, verify each signer's registration status and ascertain that each registration number entered on the petition is correct." TEX. ELEC. CODE ANN. § 141.064(4). While the statute does not expressly require the circulator to scribe voter registration numbers on the ballot petitions if they were not written down by the signatory, Pikl argues that, when that statute is read in conjunction with the other statutes, it implicity requires the circulator to add that information.

In discussing one of the principal purposes of the Texas Elections Code—the prevention of election fraud—the Texas Supreme Court has opined that petition signatures should not be invalidated "if the signer provides enough information to allow verification of the signer's voting eligibility for a particular election." *In re Bell*, 91 S.W.3d 784, 787 (Tex. 2002) (orig. proceeding). Nevertheless, Pikl contends that, unless the voter registration numbers were placed on the ballot petitions, Moore would be unable to verify each signer's registration status. Yet, verification of registration status is to be completed by the circulator. In this case, the circulator's affidavit, attached to each petition page, swore that the circulator verified each signatory's registration status.

7

Therefore, Moore was entitled to "treat as valid each signature to which the affidavit applie[d], without further verification, unless proven otherwise." TEX. ELEC. CODE ANN. § 141.065(b).

Pikl's proof is comprised of his affidavit, which states that his independent review concluded that only 237 persons signing Johnson's petitions were registered voters. Because dates of birth were redacted from the ballot petitions provided to Pikl by Moore, Pikl admitted that he was unable to verify voter registration status by reviewing the county voter registration records, and instead relied on the GOP Data Center database.[3] He further stated that over fifty-four signatories "had different addresses on the petitions than are found in the official voter registration records," and, in support of this conclusion, attached a list titled "POTENTIALLY INVALID PETITION SIGNATURES."

In order to grant Pikl's petition, the record must demonstrate that Moore failed to comply with a duty required by law. Unlike Pikl, the circulators had each person's date of birth. Because the circulators swore that they verified each person's voter registration status, the record before us contains no evidence establishing that the circulators did not make those verifications. Because Moore was entitled to rely on the circulator's affidavit under Section 141.065, we cannot conclude that any ministerial duty was violated. While Pikl's affidavit is some evidence that the signatures are questionable, at best, Pikl's affidavit merely creates a fact issue.

Pikl also argues that, based upon his review of the GOP Data Center database of registered voters, fifty-seven of the signatures belonged to people who are not registered voters. When those

---

[3]Pikl argues that, by redacting the dates of birth from the ballot petitions, Moore has rendered enforcement impossible. Yet, Pikl has not established that he was unable to obtain that information by other means—such as a court order. Accordingly, the record does not substantiate this claim.

names are eliminated, together with the twenty-two names redacted by Johnson for residing outside of the district, Johnson only produced 237 valid signatures. Nevertheless, Pikl does not establish that the voters are not registered based on the applicable county records, but instead relies on the GOP database. Moreover, by the record submitted here, Pikl does not establish the reliability of the GOP Data Center database as a source sufficient to reject those signatures. Rather, he merely states, "I understand that this is the source used by the State government to determine if persons are registered voters in Texas." Consequently, Pikl's affidavit merely creates a fact issue as to this question as well.

A writ of mandamus in this case cannot issue since "[t]he number of registered voters who signed is a fact question" that we cannot clearly resolve with the record before us. *Brady*, 795 S.W.2d at 714; *see Carter v. Fourteenth Court of Appeals*, 789 S.W.2d 260, 261 (Tex. 1990) (orig. proceeding).

## IV.    Conclusion

We deny the petition for writ of mandamus.[4]


Ralph K. Burgess
Justice

Date Submitted:    January 11, 2018
Date Decided:    January 12, 2018

---

[4]We do note, however, that Pikl has filed a challenge under Section 141.032 of the Texas Election Code and that an "authority's determination . . . that an application complies with the applicable requirements does not preclude a subsequent determination that the application does not comply." TEX. ELEC. CODE ANN. § 141.032(c). We hold today merely that the record before us does not support Pikl's request for mandamus relief, and nothing more.