**D. Camille DUNN, Relator,**

v.

**Robert SLAGLE, Chairman, Texas Democratic Executive Committee, et al, Respondents.**

No. B14–90–053–CV

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 13, 1990.

W. Troy McKinney, Joe H. Reynolds, George M. Bishop, Mark E. Steiner, Houston, for relator.

Harold D. Hammett, Fort Worth, for respondents.

A. Glenn Diddel, III, Houston, for real party in interest Brady.

Before PAUL PRESSLER, ROBERTSON and DRAUGHN, JJ.

MAJORITY OPINION

ROBERTSON, Justice.

We granted leave for relator to file a petition for writ of mandamus seeking to have Elaine Brady's name removed from the Democratic Primary Election Ballot for the position of Justice for the First District Court of Appeals, Place One. Named as respondents, in addition to Slagle, are the chairmen of the democratic party in each of the fourteen counties comprising the first court of appeals district: Anita Mayer, Austin County; Mark Davis, Brazos County; Ron Gay, Brazoria County; A.R. Brinkman, Burleson County; Guy Jackson, Chambers County; George Cason, Colorado County; Wayne Starr, Fort Bend County; Glenn Ferguson, Grimes County; M.T. Waddell, Galveston County; Jack Carter, Harris County; Troy Nash, Trinity County; Larkin Eakin, Waller County; Joe Henderson, Walker County; and Stanley Beard, Washington County. We grant the writ.

Relator Dunn is presently a Justice on the First District Court of Appeals and is seeking re-election. On January 2, 1990, Elaine Brady, the real party in interest, filed her application for a place on the Democratic Party 1990 General Primary Ballot for the position currently held by Dunn. Attached to her application were 40 pages of petitions containing 302 signatures, 52 more than the 250 required by TEX.ELEC.CODE ANN. § 172.021 (Vernon 1986). Relator challenges both Brady's application to be placed on the ballot and the validity of 184 of the 302 signatures contained in the petitions supporting the application.

Initially, relator contends Brady should be denied a place on the ballot because her application, while purporting to have been sworn before a notary public, did not contain the notarial seal or stamp. We have been unable to find any Texas cases in which this issue has been previously addressed. We find it unnecessary to address this issue, however, because we find fatal flaws concerning a sufficient number

of signatures on Brady's petitions to bring the number of valid signatures below the required 250.

To be entitled to appear on the ballot, it was necessary for Brady's application to be accompanied by a petition, or petitions, containing the valid signatures of at least 250 qualified voters. Tex.Elec.Code Ann. §§ 172.021, 141.062, 141.063 (Vernon 1986). Section 141.063 mandates the requirements for a valid signature to a petition: (1) the signer must be a registered voter, and (2) the petition must include for each signer, among other matters, the signer's residence address and voter registration number.

Of the 302 signatures on Brady's petition, relator challenges a total of 184—58 as not being registered voters; 20 for failure to list a voter registration number; 18 for listing an incorrect voter registration number; 8 for failure to contain the signature of an officer administering the oath; 59 for failure to list either the city and/or zip code and/or street address; 4 for failure to print a name; 3 for witnessing their own signature; and 1 for listing the date of signing as a date after that contained in the jurat.

Relator attached to her mandamus petition affidavits from the Harris County Tax Assessor–Collector showing that 58 of Brady's petition signers "do not appear on the list of registered voters." Brady challenges the correctness of this assertion and has submitted evidence in her response to the mandamus petition that 31 of the 58 signatures do in fact represent registered voters. Brady does not, however, dispute the fact that 27 of the total 302 petition signers were not registered voters.

Next, 28 of the petition signers failed to include any voter registration number in the space provided. Brady does not dispute this fact. Because of overlaps with the above category, however, the net number challenged for failure to list a voter registration number is 6.

Relator attached to her mandamus petition a photocopy of the voter registration certificate, properly certified by the custodian, of 18 signers to Brady's petitions.

These photocopies show that each of these 18 signers included an incorrect voter registration number on the petition. Brady does not dispute this fact. Again accounting for overlap, however, the net number of signatures challenged in this category is 15.

Brady also does not dispute the following: that 7 of her petition signers did not include a city or zip code in the appropriate blanks on the petition; that 24 of her petition signers did not indicate a city of residence in the appropriate blank on the petition; that 12 of her petition signers did not indicate a zip code in the appropriate blank on the petition; or that 2 of her petition signers failed to list a street address in the appropriate blank on the petition.

We pause to note two matters. First, it is extremely distressing to observe the lackadaisical manner in which Brady followed, or failed to follow, the statutory requirements for signatures on her petitions. On 35 of the 40 pages of petitions, Brady personally acted as the circulator and executed the required affidavit, excluding one which has no jurat at all. This is not, therefore, a situation in which other people can be blamed for the repeated instances of noncompliance. Second, Brady's counsel has carried forth this same flippant attitude in his brief in response to the petition for writ of mandamus and in his post-submission brief. He repeatedly castigates relator for seeking to have Brady removed from the ballot because "the omissions [of Brady] complained of are nothing more than hypertechnical errors that have not in any way frustrated the verification process." He reasons that since relator was able to verify the signatures on Brady's petition from the information contained thereon, relator has not been "defrauded, mislead or in any way prejudiced in any effort to identify which of the signatories are registered voters and whether or not they in fact signed the petitions as alleged in Ms. Brady's sworn papers." In his post-submission brief he misrepresents questions by the court during oral submission and ascribes to the panel statements he himself made.

Counsel plays too lightly with the Texas election code and the authorities construing it. The relator in *Shields v. Upham*, 597 S.W.2d 502, 504 (Tex.Civ.App.—El Paso 1980, no writ), likewise contended the petitions contained sufficient information enabling verification and that nothing more was required. The court, however, disagreed, holding that the provisions of Art. 13.08(d), the forerunner of § 141.063 of the election code, are mandatory. The court stated:

Even though there was sufficient information on the petition of Baxter Shields for the Republican Executive Committee to verify the signatures of 211 voters, and only 166 signatures were required to support the application for a position on the ballot, that is not the test. The Election Code does not require just a petition which may be verified. It requires specified information which this petition admittedly did not contain. Thus, there has not been a strict compliance with the statute....

*Id.* It has long been the rule in this state that candidates for public office must strictly comply with *all* statutory requirements in order to have their names placed on the ballot. *Brown v. Walker*, 377 S.W.2d 630, 632 (Tex.1974).

■ Turning now to the specific issues before us, we hold that the 27 unregistered voters who signed the petitions were not valid signers. *Sparks v. Busby*, 639 S.W.2d 713, 718 (Tex.Civ.App.—Tyler 1982, writ dism'd w.o.j.). We likewise hold that the 6 signatures that did not include a voter registration number were not valid. *Gray v. Vance*, 567 S.W.2d 16, 17 (Tex.Civ. App.—Fort Worth 1978, no writ). As to those who inserted an erroneous voter registration number, we fail to see the difference between the complete omission of a voter registration number and the inclusion of an incorrect number, whether this results from an honest mistake or intentional misrepresentation. Therefore, we hold that the 15 signatures which included an incorrect voter registration number were not valid.

■ Finally this brings us to those signatures which contain defects in the address of the signer. Section 1.005(17) of the election code defines the term "residence address" as "the street address and any apartment number, or the address at which mail is received if the residence has no address, and the city, state, and zip code that correspond to a person's residence." TEX.ELEC.CODE ANN. § 1.005(17) (Vernon 1986). In *Gray v. Vance*, 567 S.W.2d at 17, the Fort Worth court of appeals held that "street addresses ... and home city addresses" are mandatory, like the other requirements of Article 13.08(d), the forerunner of § 141.063 of the Texas election code. The same result was reached in *Pierce v. Peters*, 599 S.W.2d 849, 851 (Tex.Civ.App. —San Antonio 1980, no writ). These decisions are consistent with other decisions construing the requirements of necessary information on a petition as mandatory. We feel obligated to follow these cases, especially in view of the fact that the legislature, which has met repeatedly and which codified the election code, has not relaxed the strict interpretation placed by the courts on the requirements of the statute. While we have held that the failure to insert the state (Texas) in an address does not invalidate a signature, *Bacon v. Harris County Republican Executive Comm.*, 743 S.W.2d 369, 371 (Tex.App.—Houston [14th Dist.] 1988, no writ), in reaching that conclusion, we relied heavily upon the fact that the chief election officer of the state, the Secretary of State, who had composed the prescribed petition form had not provided a space for designation of the state. We are not inclined to extend *Bacon* on the facts presented by this case.

Today, we hold that where the signer fails to include *both* the city and the zip code, that signature is not valid. Thus, the 7 signers who fall into this category cannot be counted. Deducting these invalid signatures, the total valid signatures do not meet or exceed the required 250. We leave for decision on another day whether the designation of the city without a zip code, or the designation of the zip code without a city, invalidates a signature. In the instant case, 55 of the 302 signatures on Brady's

petition are not valid. When these names are deleted, Brady does not have the necessary 250 signers. Thus, she has not met the requirements to be placed on the ballot as a candidate for Justice, First District Court of Appeals, Place One.

The writ of mandamus directing that Brady's name not be placed on the ballot is granted.

Because of the approaching primary election and the deadline for the action here sought and granted, no motion for rehearing will be entertained.

DRAUGHN, Justice, concurring.

I concur with my fellow justices in their conclusion but feel that some additional elaboration is needed to articulate my position in this ballot-access dispute.

It is elementary that a state has the power to draft and enforce laws governing the election of its officials. Fundamental to that function is the power to determine the requirements necessary for a prospective candidate to get his or her name placed on the ballot. These requirements for access to the ballot cannot be arbitrary and unreasonable. They cannot violate the fundamental constitutional rights of the prospective candidates and they must be uniformly applied to all candidates. We are called on this case to arbitrate between two competing legal principles: (1) the law's general inclination toward allowing prospective candidates to be placed on the ballot if they are qualified, without regard to hypertechnical details; and (2) the strict enforcement of a state's election laws. In this case I opt in favor of the latter principle and find that the statute places the responsibility for complying with its mandatory terms strictly on the prospective candidate.

In addition to requiring two hundred fifty (250) signatures of registered voters on the petition, the Election Code requires certain enumerated information in order for each signature to be valid. Attesting to the seriousness of these requirements, the Election Code also requires that an affidavit must accompany the signatures. In it, the circulator of the petition must swear that he or she has "verified each signer's registration status," and state under oath that he or she "believes each signature to be genuine and the corresponding information to be correct." TEX.ELEC.CODE ANN. § 141.065(a)(3) and (4) (Vernon 1986).

In the case before us, the circulator and the one who executed affidavits attached to the petitions was primarily the would-be candidate Brady. By doing so she swore to the verification and her belief in the correctness of the information contained in the petition. Sec. 141.064(4) of the Election Code also provides that "before the petition is filed, [the circulator must] verify each signer's registration status and ascertain that each registration number entered on the petition is correct."

It appears clear to me that candidate Brady did not comply with the provisions of the Election Code in regard to verifying the registration status of the signers on her petition and in regard to the correctness of the information contained thereon. If the legislature saw fit to require not only that certain information be supplied but that it be supported by affidavit, I am hard pressed to accept the defense of Ms. Brady that the information is not really important if there are enough kernels of information supplied so as to enable her opponents or others to search the records and verify its correctness. The fact that others may ultimately be able to verify the signer's registration status is not the litmus test for validity of the signature. It does not excuse the applicant from providing the specific information required by the Election Code. *Shields v. Upham*, 597 S.W.2d 502, 504 (Tex.Civ.App.—El Paso 1980, no writ).

To take Ms. Brady's approach would trivialize the importance of the information required and the seriousness of the oath mandated by the legislature. I simply cannot accept this interpretation as valid because it implies that the legislature performed a meaningless act by requiring certain information on the supporting petitions and requiring that the person circulating the petition to swear under oath that the registration status of the signer has been verified and that each registration number

entered on the petition is correct. I am convinced that the statutorily mandated information (with extremely rare exceptions) is critical to the validity of the petition. I am also convinced, that the legislature passed these provisions of the Election Code intending that the burden and responsibility for the completion and correctness of the petitions should rest solely on the shoulders of the potential candidate.

To become a candidate is a privilege, not a right. And if a person wants to exercise that privilege, he or she has the responsibility to see that the petitions legally required for his or her candidacy are properly signed and that accompanying information is correct before it is verified under oath and filed with the proper party authorities for certification to be placed on the primary ballot. To hold otherwise makes a hollow mockery out of the election law and encourages would-be candidates to selectively, or negligently, ignore specific statutory provisions of the Election Code and official election forms based thereon. It also allows the careless or unconcerned candidate to place the responsibility and burden of determining the validity of his or her facially defective petitions on someone else.

In reaching my conclusions, I am not unmindful of the general proposition that, all things being equal, courts should lean in favor of placing potential candidates on the ballot. Extreme hypertechnicalities in ballot-access statutes should not so blind us that we bar potential candidates who are otherwise qualified. However, I do not find that to be the case here. The Election Code does not place an undue or harsh burden on the potential judicial candidate and I find it clear by its terms. As indicated by our previous decisions, there is room for common-sense interpretations of the statute to dispense with harsh reliance on minor facial errors in the petitions. *Bacon v. Harris County Republican Execu-* *tive Comm.*, 743 S.W.2d 369 (Tex.App.—Houston [14th Dist.] 1988, no writ). Where a minor facial error, readily verifiable, occurs, I would find the signature is acceptable if the remainder of the information is correct. I would not find the omission of the city or the zip code fatal to the signature so long as one or the other was contained thereon. But where there is a pattern of serious errors as here and these errors are incorrectly sworn to as valid I find it brings into question the integrity of the statutory process and we should not judicially approve such omissions or errors. Nor should opposing candidates and other officials be required to search the records to fill in the statutory gaps for the would-be candidate.

In conclusion, I find that it is solely the responsibility of the candidate to insure that at least 250 or more persons signing his or her petition are legally registered voters in the concerned county or counties and the statutorily mandated information accompanying them is facially complete and internally correct. If such is not the case, the candidate's name should not be certified to be on the primary ballot and, if certified, mandamus will lie to direct the exclusion of that candidate's name from the ballot.

With this elaboration, I concur in the majority opinion that the mandamus should be granted in this matter and that writ issue to exclude the name of Elaine Brady from the 1990 Democratic Primary Election Ballot as a candidate for the position of Justice for the First District Court of Appeals, Place One.