**Donald K. SHIPLEY, Relator,**

**v.**

**HARRIS COUNTY DEMOCRATIC EXECUTIVE COMMITTEE and Carlos L. Correa, Respondent.**

No. 01–90–00122–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 16, 1990.

Writ of Mandamus Vacated
Feb. 21, 1990.

James Stafford, Houston, for relator.

Andrew L. Jefferson, Jr., Jefferson & Mims, Randall Buck Wood, Ray, Wood & Fine, Houston, for respondent.

Before SAM BASS, DUGGAN and O'CONNOR.

OPINION

SAM BASS, Justice.

This is an election mandamus in which the relator, Donald K. Shipley, seeks to have this court disqualify his opponent in the Democratic primary election for judge of the 182nd District Court. He claims that a sufficient number of signatures contained on the petitions supporting Correa's application are invalid so that the total is below the required 250.

To be entitled to appear on the ballot, Correa's application must be accompanied by a petition, or petitions, containing the valid signatures of not less than 250 qualified voters. TEX.ELEC.CODE ANN. §§ 141.-062, 141.063 (Vernon 1986), 172.021 (Vernon Supp.1990). Section 141.063 sets out the requirements for a valid signature on a petition. A signature must, among others, meet the following requirements: 1) the signer must be a registered voter; 2) the petition must include the signer's residence address, the signer's voter registration number, the date of signing, and the signer's printed name; and 3) the petition containing the signature must contain an affidavit of the circulator.

Shipley challenges signatures on the following bases: the signer is not a registered voter; the voter registration number is missing; the voter registration number is incorrect; the signature is missing; neither a city nor zip code are listed; the name listed does not match the voter registration number on file with Harris County Tax Assessor; the affiant witnessed his or her own signature; there is no printed name; no city is listed; an incomplete or no zip is listed; the address listed does not correspond with address listed by the Harris County Tax Assessor; date of signature is missing; and date of signature on the petition is incomplete.

Attached to the petition is an affidavit from the Harris County Tax Assessor–Collector showing that 59 names on the petition "do not appear on the current list of registered voters." Correa disputes this list and has submitted an affidavit of the deputy clerk and assistant supervisor in the voter registration section of the Harris County Tax Assessor–Collector's office. The deputy clerk states that 24 of the 59 signatures do in fact represent registered voters. Assuming that these 24 signatures are valid, 35 remain for which Correa presents no evidence that they are registered voters. *Dunn v. Slagle*, 783 S.W.2d 953 (Tex.App.—Houston [14th Dist.], 1990, orig. proceeding), *citing Sparks v. Busby*, 639 S.W.2d 713, 718 (Tex. Civ.App.—Tyler 1982, writ dism'd w.o.j.). We find that these 35 signatures are not valid.

We also find that, accounting for overlap, the net 3 signatures that do not include a voter registration number are not valid. *Id.* (*Citing Gray v. Vance*, 567 S.W.2d 16, 17 (Tex.Civ.App.—Fort Worth 1978, no writ)).[1] We find that the net 5 signatures that contain an incorrect registration number are invalid. *Id.* We find that the 1 signature that does not contain either the city or a complete zip code is not valid. *Id.*

Three of the signers witnessed their own signatures. TEX.ELEC.CODE ANN. § 141.063(3) requires that the part of the petition in which the signature appears contain the affidavit required by section 141.-065. This section requires that the affidavit of the circulator state that he or she has:

1. In *Pilcher v. Rains*, 853 F.2d 334 (5th Cir. 1988), the trial court found that a provision of the Texas Election Code requiring voter registration numbers on *minor-party ballot access petitions* was an impermissible burden on access to the ballot under the first and fourteenth amendments to the United States Constitution. In order to have its nominees placed on the ballot, TEX.ELEC.CODE ANN. § 181.006(b)(2) (Vernon 1986) required the Libertarian party to collect a number of signatures of registered voters equal to one percent of the total votes cast in the last gubernatorial election. Each signature had to be accompanied by the signer's voter registration number. This meant that the Libertarian party was required to obtain 34,415 signatures and corresponding voter registration numbers. *Pilcher*, 853 F.2d at 334. After reviewing the evidence and noting that the State had produced no evidence concerning the *necessity* of the requirement, the court held that the trial court's finding was not clearly erroneous.

*Pilcher* is distinguishable from the case before this Court. First, *Pilcher* dealt with a political *party's* access to the ballot, as opposed to an *individual* candidate's access. Second, the number of voter registration numbers required in *Pilcher* was 34,415 compared to 250 in the case before this Court. Finally, the Libertarian party had to fulfill requirements not imposed on the major political parties; in the case before this Court, relator does not have to fulfill any requirement that has not been imposed on the other candidates. Because this case does not involve a complaint that the voter registration number requirement is an unconstitutional burden on a political party's access to the ballot, *Pilcher* is not controlling.

(1) pointed out and read to each signer, before the petition was signed, each statement pertaining to the signer that appears on the petition;

(2) witnessed each signature;

(3) verified each signer's registration status; and

(4) believes each signature to be genuine and the corresponding information to be correct.

TEX.ELEC.CODE ANN. § 141.065 (Vernon 1986).

This ensures that a third person has pointed out the required information to the signer and is designed to be a check on the signature signing process. *See Geiger v. DeBusk,* 534 S.W.2d 437 (Tex.Civ.App.—Dallas 1976) (orig. proceeding). We hold a signature verified by its signer invalidates the signature and we find that the 3 signatures in this category are invalid.

■ Next we turn to the issue of whether the signer must include his or her full address on the petition, including both city and zip code. This challenge is directed at a net 33 signatures.[2]

TEX.ELEC.CODE ANN. § 141.063(2)(A) requires that the petition include the signer's residence address. TEX.ELEC.CODE ANN. § 1.005(17) defines residence address as:

the street address and any apartment number, *or the address at which mail is received if the residence has no address,* and the *city, state, and zip code* that correspond to a person's residence.

(Emphasis added.)

In *Love v. Veselka,* 764 S.W.2d 564 (Tex. App.—Houston [1st Dist.] 1988, orig. proceeding), this Court found that the requirement that the state be included in the address was not essential. The court based its decision, in part, on the fact that the form provided by the secretary of state did not contain a line or blank space designating that the petition signer should insert the word "Texas" as a required item of information. *Id.* at 565. It also noted that the inclusion of the word "Texas" would seem to be "superfluous" because of the requirement that the petition signer designate a valid Texas voter registration number. The inclusion of the address or zip code is not superfluous. Unlike the *Love* case, there are blanks in the forms for the city and the zip code; and, in fact, the abbreviation "TX" is now printed in the prescribed form. The requirements of § 141.063 are mandatory and a candidate must strictly comply with the Election Code. *Gray v. Vance,* 567 S.W.2d 16 (Tex. Civ.App.—Fort Worth 1978, no writ, orig. proceeding). Therefore, we hold that the 33 signatures that either do not contain the city or do not contain a complete zip code are not in compliance with the code. We find that these 33 signatures are not valid.

■ Because the requirements are mandatory, we also find that the omission of a signature invalidates the attempt to sign the petition. In our case, there is 1 instance in which there is no signature. Under the same rationale that the § 141.063 requirements are mandatory, we find that the omission of the date of signing and an incomplete date[3] invalidate the signature. TEX.ELEC.CODE ANN. § 141.063(2)(C). On this basis, we find a total of 4 invalid signatures.

Correa's petition contains 333 signatures. We have found that 35 are not registered voters, that 3 do not include a voter registration number, that 5 contain an incorrect registration number, that 1 contains neither the city nor the zip code, that 3 signers witnessed their own signatures, that 33 do not include both the city and a complete zip code, that 1 signature is missing, and that 4 contain no date or an incomplete date. These figures total 85 invalid signatures, leaving 248, less than the required 250.

**2.** This number does not include those signatures with partial zip codes. We do not decide the issue of whether a partial zip code is sufficient.

**3.** Relator claims an additional incomplete date, but the poor quality of reproduction of the petition keeps us from being able to determine absolutely that the date is incomplete. Accordingly, respondent is credited with a complete date.

We, therefore, need not reach the other contentions of the parties.

Accordingly, we grant the petition for writ of mandamus and order the chair of the Harris County Democratic Executive Committee to reject Correa's application, deliver to Correa written notice of the reason for rejection, and certify in writing a declaration of ineligibility to the canvassing authority for the election. *See Sears v. Bayoud*, 786 S.W.2d 248 (Tex.1990); Tex. Elec.Code Ann. § 145.003(g) (Vernon 1986). Because of the time constraints on the action, we will entertain no motion for rehearing.

O'CONNOR, Justice, dissenting.

I respectfully dissent. I would sustain Carlos L. Correa's challenge to the constitutionality of sections 172.021(e) and 141.-063(2)(B) of the Texas Election Code and deny relator's application for mandamus.[1]

The United States Supreme Court held in *Anderson v. Celebrezze*, 460 U.S. 780, 787, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983), that the first and fourteenth amendments forbid a state from using its regulatory power to unnecessarily burden access to the ballot. In *Pilcher v. Rains*, 853 F.2d 334, 336 (5th Cir.1988), the United States Fifth Circuit Court of Appeals held that the *Anderson* case and the first and fourteenth amendments prohibit strict interpretation of the requirements of 141.063(2)(B) of the Texas Election Code. The Fifth Circuit held that a missing voter registration number did not invalidate a signature. This is the same provision in the Election Code which Judge Shipley claims makes the petition of candidate Carlos L. Correa deficient.[2]

Here, the majority disqualifies a candidate because he has only 248 valid signatures. The majority holds he lacks two valid signatures. To arrive at this result, the majority subtracted three signatures because of lack of voter registration numbers and five signatures for incorrect voter registration numbers. I think, at a minimum, the *Pilcher* case requires us to credit candidate Correa with those eight signatures.

Quoting from the *Anderson* case, the *Pilcher* opinion describes the constitutional test we should apply to a regulation that limits ballot access:

> [The court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment the court must not only determine the legitimacy and strength of each of those interests, it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional

1. At oral argument, the Harris County Democratic Party waived the challenge to the constitutionality of section 172.021(e), Tex.Elec.Code Ann. (Vernon Supp.1990).

2. In footnote 2, the majority says *Pilcher* does not apply here because it involved a political party's access to the ballot (as opposed to an individual candidate's access), and the number of voter registration numbers required was 34,-415 (compared to 250). I do not think those distinctions are worth noting. A candidate's access to the ballot cannot be less important than a party's access. The purpose of the Libertarian party suit was to gain access to the ballot, so it could place its candidates on the ballot.

The majority also says that the Libertarian Party had to fulfill requirements that were not imposed on other parties. The majority implies that Correa does not have to fulfill any requirements that are not imposed on other candidates. I disagree. Only the candidates in large counties have this burden. Candidates in small counties do not.

Finally, the majority says, because the restriction does not involve an unconstitutional burden on a political party's access to the ballot, *Pilcher* does not control. I think the political party's interest in protecting incumbents places the party at odds with their own candidates. Correa's interest in the constitutionality of the process is sufficient to raise the issue.

*Pilcher,* 853 F.2d at 336.

We should identify and evaluate the precise interests of the State for limiting Correa's access to the ballot. To do that, we must look at the history of judicial selection.

Beginning in the late 1970's, judicial elections in the large counties became partisan. In the elections of 1982 and 1984, a number of incumbent judges in Dallas and Harris Counties were defeated. In Harris County, for example, six incumbent Republicans were defeated in 1982; two years later, seven incumbent Democrats were defeated. A Harris County judicial candidate's success in those years was often tied to the top of the ticket races.

As elections became more dependent on forces at the top of the ticket, some candidates filed for positions on their party's ballot at the last minute. Without any encouragement from the political parties, some candidates filed for any open spot on their party's ticket.[3] Many of the last minute filers had no intention of even running a campaign.[4] Instead, they were gambling that the top of their ticket would elect them.

The judges and lawyers of the large counties were understandably disturbed by the back and forth swings. The system was not stable. Judges were elected because of their affiliation with that year's dominant political party.[5] Qualifications and experience seemed to have little or

nothing to do with the election of judges in the large counties.

As a result of the problem, the judges, lawyers, and public interest groups lobbied for an amendment to discourage last minute candidates for judicial position in the large counties. Section 172.021, TEX.ELEC. CODE ANN. (Vernon 1986), was amended to require candidates for judicial offices in counties with a population of more than 850,000, to file 250 signatures in addition to a filing fee.[6] The purpose of the restriction on candidates for judicial offices in the populous counties was to limit last-minute access to the ballot. With the requirement of collecting signatures, a candidate for judicial position was required to make public his or her intentions to file for office weeks in advance. The amendment forced those who intended to run for judicial office to make their decisions in advance of the filing deadline and make it public.

I believe the system of restricting access to the ballot in large counties by requiring 250 signatures is unconstitutional. I do not see a legitimate state interest in protecting judicial incumbents in large counties. If the State has a legitimate interest in protecting incumbents against "frivolous filers," then the State should assert this interest in all counties, and impose the same burden statewide. The unequal imposition of this burden makes the requirement under section 172.021(e) unconstitutional on its face.[7]

---

3. The last-minute filers became known as "frivolous filers."

4. In 1984, one of these last minute candidates was elected to a Harris County district bench while she was on vacation in England.

5. In Harris County, 94% of incumbent Democrats won when a Democrat carried the top of the ticket. Champagne and Berry, *The New Partisanship in Texas Judicial Elections,* Tex.B.J. 1102, 1105 (November 1987). Similarly, 83% of incumbent Republicans won contested district court races in Harris County when a Republican carried the top of the ticket. *Id.*

6. In lieu of a filing fee, a candidate may file 250 signatures. A candidate could either: (1) pay a filing fee and file 250 signatures; or (2) file 250

signatures in lieu of a filing fee, and file 250 signatures (250 + 250 = 500). TEX.ELEC.CODE ANN. § 172.021(e) (Vernon Supp.1990).

7. Section 172.021(e) also unfairly limits ballot access to potential judicial candidates in some small counties. The provision requires the candidates for a court of appeals district that serves a large county, to file 250 signatures. Besides Harris County, the First Court of Appeals serves 13 small counties. Because Harris County has a population over 850,000, any candidate for the First Court of Appeals must file the 250 signatures, even if the candidate lives in a small adjoining county, like Waller County for example.

## ORDER

PER CURIAM.

IT IS ORDERED that the writ of mandamus of February 16, 1990, in Cause No. 01–90–00122–CV styled *Donald K. Shipley v. Harris County Democratic Executive Committee and Carlos L. Correa* is hereby vacated in accordance with the Supreme Court of Texas' order of February 21, 1990.

IT IS SO ORDERED.