**In re Kevin H. BELL, Relator.**

No. 02–0034.

Supreme Court of Texas.

Jan. 22, 2002.

Kevin H. Bell, Houston, for relator.

Jared Ryker Woodfill, Houston, for respondent.

Justice O'NEILL delivered the opinion of the Court, joined by Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice OWEN, Justice JEFFERSON, and Justice RODRIGUEZ.

In this original mandamus proceeding, Kevin H. Bell asks this Court to require the Harris County Republican Primary Director and the Harris County Republican Party Chair to certify him as a candidate for Justice of the Peace, Precinct 4, Position 1, on the March 12, 2002, Republican primary election ballot. We must decide whether certain signatures on Bell's petition for a place on the ballot are invalid because the signers omitted their city of residence from their address. We conclude that the signatures are not invalid due to this omission and conditionally grant relief.

I

On December 28, 2001, Bell submitted his application for a place on the Republican primary ballot, along with a filing fee and a petition containing voter signatures. By letter dated January 4, 2002, respondents rejected Bell's application due to "insufficient signature requirements," citing Texas Election Code section 141.063.

Respondents provided no further explanation for rejecting Bell's application.

Bell sought mandamus relief from the court of appeals concerning respondents' action, which the court summarily denied. Bell now seeks mandamus relief from this Court. *See* TEX. ELEC.CODE § 273.061. We ordered respondents to allow Bell to participate in the drawing for ballot position in the primary election, pending our decision on whether Bell's name should be placed on the ballot.

## II

For a place on the ballot, Bell needs 250 valid signatures on his petition, *see* TEX. ELEC.CODE §§ 141.062(a)(2), 172.021(e), assuming he satisfies all other Election Code requirements. Bell contends that respondents rejected his application because fifteen individuals who signed his petition omitted the city from their addresses, and another forty-three individuals omitted their city and zip code. Respondents do not dispute that they rejected Bell's application for this reason.

Without these disputed signatures, Bell concedes that his petition does not contain the required 250 signatures. Moreover, respondents do not dispute that Bell meets the requisite number if these disputed signatures are counted. Thus, we must decide whether the disputed signatures are invalid under the Election Code, because some signers failed to identify their city of residence or their city of residence and zip code when providing their addresses.

## III

Texas Election Code section 141.063(a), most recently amended in 1997, provides that a signature on a petition is valid if: "the signer, at the time of signing, is a registered voter of the territory from which the office sought is elected . . . ." TEX. ELEC.CODE § 141.063(a)(1). Section 141.063(a)(2) further states that a signature is valid if the petition includes the following information with respect to each signer: "(A) the signer's residence address; (B) the signer's date of birth and the signer's voter registration number and, if the territory from which signatures must be obtained is situated in more than one county, the county of registration; (C) the date of signing; and (D) the signer's printed name." *Id.* § 141.063(a)(2)(A)-(D). The Election Code defines "residence address" as "the street address and any apartment number, or the address at which mail is received if the residence has no address, and the city, state, and zip code that correspond to a person's residence." *Id.* § 1.005(17).

Section 1.003(a), which was added to the Election Code in 1985, states that "[t]he Code Construction Act (Chapter 311, Government Code) applies to the construction of each provision in this code." *Id.* § 1.003(a); Act of May 9, 1985, 69th Leg., R.S., ch. 211, § 1, 1985 Tex. Gen. Laws 802, 805 (codified at TEX. ELEC.CODE § 1.003). The Code Construction Act states that the Legislature is presumed to have intended a "just and reasonable result" in enacting statutes. TEX. GOV'T CODE § 311.021(3). It also makes clear that courts may consider the "legislative history" and the "object sought to be attained" in construing statutes. *Id.* § 311.023(1), (3). The legislative history to the 1997 Election Code amendments indicates that the Legislature was concerned with, among other things, preventing election fraud. *See* SENATE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 331, 75th Leg., R.S. (1997); HOUSE COMM. ON ELECTIONS, BILL ANALYSIS, Tex. H.B. 331, 75th Leg., R.S. (1997). Thus, in assessing whether the contested signatures are invalid under section 141.063, this statutory purpose serves as a guide.

Some courts of appeals have considered the effect of omitting the city or city and zip code from a· signer's address under earlier versions of the Election Code and concluded that such omissions invalidate the signature. *See, e.g., Pierce v. Peters,* 599 S.W.2d 849, 851 (Tex.Civ.App.-San Antonio 1980, orig. proceeding); *Shields v. Upham,* 597 S.W.2d 502, 504 (Tex.Civ. App.-El Paso 1980, orig. proceeding); *Gray v. Vance,* 567 S.W.2d 16, 17 (Tex.Civ. App.-Fort Worth 1978, orig. proceeding). However, these cases were decided under a prior version of the Election Code that did not specifically incorporate the Code Construction Act. Nor did these decisions consider the issue in light of the Election Code's purpose or ·"object sought to be attained" by the petition signature requirement. We also note that these cases were decided under an earlier statutory provision that affirmatively stated, "[t]he petition *must show* the following information with respect to each signer: His address (including his street address if residing in a city, and his rural route address if not residing in a city) ...." (emphasis added). Act of May 22, 1975, 64th Leg., R.S., ch. 675, § 1, 1975 Tex. Gen. Laws 2046, 2048 (repealed 1985) (current version at TEX. ELEC.CODE § 141.063). That mandatory language no longer appears in the section defining a signature's validity. *See* TEX. ELEC.CODE § 141.063.

A few cases decided after the Code Construction Act was incorporated into the Election Code appeared to follow these earlier decisions. *See, e.g., Shipley v. Harris County Democratic Executive Comm.,* 795 S.W.2d 766, 768 (Tex.App.- Houston [1st Dist.] 1990, orig. proceeding), *overruled sub nom. and subsequently vacated as moot Correa v. First Court of Appeals,* 795 S.W.2d 704 (Tex.1990) (orig. proceeding); *Atkinson v. Carter,* 785 S.W.2d 449, 451–52 (Tex.App.-Houston [14th Dist.] 1990, orig. proceeding), *over-*

*ruled sub nom. Carter v. Fourteenth Court of Appeals,* 789 S.W.2d 260 · (Tex.1990) (orig. proceeding); *Dunn v. Slagle,* 783 S.W.2d 953, 955–56 (Tex.App.-Houston [14th Dist.] 1990, orig. proceeding), *overruled sub nom. Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712 (Tex. 1990) (orig. proceeding). However, these cases did not consider the alleged signature defects in relation to the objects "sought to be attained" by the Election Code, one such object being to prevent election fraud. Moreover, we directed the courts of appeals to withdraw their writs in each of these cases, although not on this particular issue which we did not consider. Thus, their precedential value is questionable.

The more recent decisions to discuss the issue under section 141.063 recognize that the statutory purpose in requiring each signer to list his or her "residence address" is to provide a basis for verifying the voter's eligibility (*i.e.* county residency, qualified voter, etc.) to participate in a particular election. *See, e.g., Strachan v.· Lanier,* 867 S.W.2d 52, 53 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding); *Reese v. Commissioners' Court of Cherokee County,* 861 S.W.2d 281, 283 (Tex. App.-Tyler 1993, orig. proceeding); *Love v. Veselka,* 764 S.W.2d 564, 565 (Tex.App.- Houston [1st Dist.] 1988, orig. proceeding); *Bacon v. Harris County Republican Executive Comm.,* 743 S.W.2d 369, 371 (Tex. App.-Houston [14th Dist.] 1988, orig. proceeding). These courts concluded that, if this purpose is served, petition signatures are not invalid even though they omit certain information contained in the Election Code's definition of "residence address."

In *Reese,* for example, the court held that "the failure to include the zip code will not invalidate an otherwise valid petition signature" where "inclusion of the zip code will not help verify the eligibility of those

who signed the petition." *Reese,* 861 S.W.2d at 284. Similarly, in *Bacon,* the court held that failing to include the state in an address does not invalidate a petition signature under the Election Code. *Bacon,* 743 S.W.2d at 371. The *Bacon* court relied on *Love v. Veselka,* which reasoned that including the word "Texas" in the "residence address" was superfluous where the petition signer designated a valid Texas voter registration number and the state was not essential for verification purposes. *Love,* 764 S.W.2d at 565. In *Strachan,* the court looked to the purpose behind requiring each signer to list his or her address and voter registration number and concluded that "the absence of a city and zip code designation, alone, does not invalidate a signature on a petition." *Strachan,* 867 S.W.2d at 53. In reaching this conclusion, the court stated "[w]e are to take into consideration the entire petition when determining whether the residence address information for a signer is sufficient." *Id.* at 53 (citing *Fitch v. Fourteenth Court of Appeals,* 834 S.W.2d 335, 337–38 (Tex.1992)(orig. proceeding)).

We believe that these most recent decisions apply a rationale that furthers one of the principal purposes behind the Election Code—the prevention of election fraud—and produces a "just and reasonable result." *See* TEX. GOV.CODE § 311.021(3). That rationale does not invalidate a petition signature if the signer provides enough information to allow verification of the signer's voting eligibility for a particular election.

■ The Election Code itself recognizes that omitting certain information in the definition of "residence address" will not necessarily invalidate a signature. For example, section 141.063(d) states that the "omission of the state from the signer's residence address does not invalidate a signature unless the political subdivision

from which the signature is obtained is situated in more than one state." Likewise, the "omission of the zip code from the address does not invalidate a signature." TEX. ELEC.CODE § 141.063(d). In addition, section 141.063(c) states that the "use of ditto marks or abbreviations does not invalidate a signature if the required information is reasonably ascertainable." Thus, if the information omitted will not aid in determining the signer's voting eligibility for a particular election, invalidating the signatures is not a "just and reasonable result" in light of the object "sought to be attained" by the statute.

## IV

■ Section 141.063(d) states that omitting a zip code will not invalidate a signature. Therefore, the disputed signatures here are not invalid because they omit that information from the "residence address." Accordingly, we must determine whether the disputed signatures are invalid because they omit the signer's city from the "residence address." Under the Election Code, individuals signing Bell's petition must be registered voters of "the territory from which the office sought is elected." TEX. ELEC.CODE § 141.063(a)(1). Bell is running for office in Precinct 4, Harris County. Thus, each person signing Bell's petition must be, at the time of signing, a registered voter residing in Precinct 4, Harris County. *See* TEX. ELEC.CODE § 11.003.

Bell's petition is a form the Secretary of State promulgated and is used in a variety of elections. The petition has spaces for the following information with respect to each signer: (1) the date of signing; (2) printed name; (3) signature; (4) address (city, state, zip code); (5) county of residence; (6) voter registration number; and (7) date of birth. The only information missing from the disputed signatures is

the signers' city and, in some cases, their city and zip code. The disputed signatures contain all other information. For example, all individuals signing Bell's petition indicated that they resided in Harris County. They also provided their printed names, street names and numbers, voter registration numbers, and dates of birth. *See* TEX. ELEC.CODE § 141.063(a)(2)(A)-(D).

Bell's petition contains a statement that he is running for Precinct 4. That statement must be read to each individual before they sign the petition. *See* TEX. ELEC. CODE § 141.065. Significantly, Bell's petition contains no place for an individual to indicate in which precinct he or she resides. Precinct 4 encompasses parts of more than just one city. Accordingly, a person indicating that he or she resides in Houston, for example, may or may not reside within Precinct 4. Therefore, a signer's city of residence will not aid in verifying that individual's eligibility to vote in this particular election. The signer's residence in the proper precinct is the relevant inquiry.

The way to verify that a signer truly resides in Precinct 4 is to examine the voter registration records maintained in the Harris County Tax Assessor–Collector's office. The information provided by each person with a disputed signature— birth date, street name and number, county, and voter registration number—is sufficient to allow verification of the signer's voting eligibility for this particular election from the Tax Assessor Collector's records. Respondents do not contend otherwise. Nor do respondents contend that any verification efforts would be impeded because certain signers did not provide their city of residence.

We therefore conclude that omitting the signers' city of residence from Bell's peti-

tion does not undermine the purpose behind the Election Code's "residence address" requirement, because there is enough other information to allow voting-eligibility verification for this particular election. Respondents do not contend that the individuals who omitted the city from their "residence address" do not reside within Precinct 4, which is readily verifiable based upon the information provided. Thus, we conclude that the disputed signatures must be counted, and that Bell's petition is sufficient to entitle him to a place on the ballot. Because of this holding, we need not consider Bell's constitutional arguments.

Accordingly, without hearing oral argument, we conditionally grant the writ and order respondents to certify Bell as a candidate for the upcoming Republican primary election and to place his name on the primary ballot. *See* TEX.R.APP. P. ,52.8. The writ will not issue unless respondents do not comply with this opinion.

Justice BAKER filed a dissenting opinion, joined by Justice HANKINSON.

Justice BAKER, joined by Justice HANKINSON, dissenting.

"Once more into the breach, dear friends, once. more.... The game's afoot!" Thus, the Fix–It Gang rides again.[1]

\* \* \* \* \* \*

Does the Texas Election Code (the Code) require a petition filed with a candidate's application for a place on the ballot to include a city name as part of the signer's residence address? The Court answers this question no. But the Code's plain language and well-established statutory construction rules require the oppo-

---

**1.** Shakespeare, W., *Henry V*, III:I. With apologies for the added text.

site answer. Consequently, I respectfully dissent.

## I. BACKGROUND

Kevin Bell filed an application to place his name on the Republican Party primary election ballot for Justice of the Peace, Precinct Four, Position One, in Harris County, Texas. With his application, Bell paid a filing fee and submitted a petition with voter signatures. *See* Tex. Elec.Code §§ 172.021(b), (e). On January 4, 2002, the Harris County Republican Primary Director, Kathy Haigler, notified Bell that she rejected his application because of "insufficient signature requirements." Haigler referred Bell to section 141.063 of the Code for "specifications on validity of signatures."

On January 11, 2002, the court of appeals denied Bell's mandamus petition seeking to compel Haigler and the Harris County Republican Party Chair [2] to place Bell on the ballot. On January 14, Bell filed his petition for writ of mandamus with this Court. *See* Tex. Elec.Code § 272.061. Two days later, this Court granted Bell's motion for temporary relief and ordered Haigler to allow Bell to participate in the drawing for a ballot position pending the Court determining the merits of Bell's mandamus petition.

## II. THE ISSUE AND THE PARTIES' ARGUMENTS

The only issue to decide today is whether the information on a candidate's petition must identify the city in which the registered voter resides. Bell contends that the signer's city is wholly irrelevant to determine if that person resides within Harris County Precinct Four and that the only purpose in requiring the signer's ad-

dress and voter registration number is "to allow verification, if desired." *See Cohen v. Strake,* 743 S.W.2d 366, 368 (Tex.App.-Houston [14th Dist.] 1988, orig. proceeding). Additionally, Bell argues that the Court must consider the entire petition to determine if it contains the requisite information. *See Fitch v. Fourteenth Court of Appeals,* 834 S.W.2d 335, 337–38 (Tex. 1992) (orig. proceeding). He urges that, if we do so here, it is clear the office he seeks lies within Harris County Precinct Four, and this is the only pertinent information for this election. Therefore, according to Bell, this Court should hold the signatures not including the signer's city valid as a matter of law.

In response, Haigler does not dispute Bell's argument that the only signatures on the petition she believes are defective are those without a city. Instead, Haigler simply contends that she rejected Bell's ballot for "insufficient signature requirements."

## III. APPLICABLE LAW

### A. Election Code

This Court has repeatedly recognized that " 'statutory requirements concerning candidacy for political office are mandatory and are to be strictly enforced.' " *Wallace v. Howell,* 707 S.W.2d 876, 877 (Tex. 1986); *Painter v. Shaner,* 667 S.W.2d 123, 125 (Tex.1984); *Brown v. Walker,* 377 S.W.2d 630, 632 (Tex.1964); *Burroughs v. Lyles,* 142 Tex. 704, 181 S.W.2d 570, 573 (Tex.1944). Indeed, the Code uses mandatory language when describing the information that must appear in a candidate's petition. Specifically, the Code provides that, to be valid, a candidate's petition "*must* (1) be timely filed with the appro-

---

**2.** Neither Bell nor Haigler tell us the Chair's name. Accordingly, I collectively refer to the     Chair and the Primary Director as Haigler.

priate authority; (2) contain valid signatures in the number required by this code; and (3) comply with any other applicable requirements for validity prescribed by [the Election Code]." TEX. ELEC.CODE § 141.062(a)(emphasis added). And, if a candidate for justice of the peace in a county with a population of more than 850,000 pays the filing fee, the accompanying petition must have 250 signatures. TEX. ELEC.CODE § 172.021(b), (e).

Section 141.063, entitled "Validity of Signature," details the information that must be included with each signature on a petition: (1) the signer's residence address; (2) the signer's date of birth, voter registration number, and county registration number if the election involves more than one county; (3) the signing date; and (4) the signer's printed name. TEX. ELEC. CODE § 141.063(a)(2). The Code defines the signer's "residence address" as "the street address and any apartment number, or the address at which mail is received if the residence has no address, and the city, state, and zip code that correspond to a person's residence." TEX. ELEC.CODE § 1.005(17).

Before the 1997 amendments, section 141.063 did not expressly validate signatures if they omitted information that section requires. However, in 1997 the Legislature amended this section to explicitly provide that "[t]he omission of the state from the signer's residence address does not invalidate a signature unless the political subdivision from which the signature is obtained is situated in more than one state." TEX. ELEC.CODE § 141.063(d). The amendment also states that "[t]he omission of the zip code from the address does not invalidate a signature." TEX. ELEC.CODE § 141.063(d). Moreover, the Legislature amended section 141.063 to provide that the signature is the only information required to appear on the petition in the

signer's own handwriting. TEX. ELEC.CODE § 141.063(b). In passing the amendments, the Legislature observed that the amendments' purposes are "to provide for more efficient operation of elections" and to handle problems such as "voter fraud." *See* SENATE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 331, 75th Leg., R.S. (1997); HOUSE COMM. ON ELECTIONS, BILL ANALYSIS, Tex. H.B. 331, 75th Leg., R.S. (1997).

### B. STATUTORY CONSTRUCTION

This Court has held:

It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose.

*Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981) (citations omitted). We have upheld this rule on numerous occasions. *See, e.g., Quick v. Austin,* 7 S.W.3d 109, 123 (Tex.1998); *Laidlaw Waste Sys., Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex.1995). This rule complements another general statutory construction principle that courts should not insert words in a statute except to give effect to clear legislative intent. *Laidlaw,* 904 S.W.2d at 659 (citing *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 552 (Tex.1981)).

### IV. ANALYSIS

We need only look to the plain language of the pertinent Code provisions to resolve the issue here. Section 141.063 requires that a petition include the signer's "residence address." TEX. ELEC.CODE § 141.063(a)(2)(A). By definition, this includes the signer's street address, city, state, and zip code. TEX. ELEC.CODE § 1.005(17). However, section 141.063(d) validates a signature even if it omits the state, in certain circumstances, or the zip

code. Tex. Elec.Code § 141.063(d). Applying our long-recognized statutory construction rule, we presume that the Legislature included the signer's state and zip code in this subsection for a purpose—that is, to validate a signature even if the petition does not include this information. Likewise, we presume that the Legislature did not include the signer's city in this subdivision for a purpose—that is, to invalidate a signature if the petition does not include this information. *See Cameron,* 618 S.W.2d at 540; *Quick,* 7 S.W.3d at 123; *Laidlaw,* 904 S.W.2d at 659.

Bell and the Court cite cases holding that, although the petitions at issue omitted certain information, this did not render the signature invalid. *Reese v. Commissioners' Court of Cherokee County,* 861 S.W.2d 281 (Tex.App.-Tyler 1993, orig. proceeding) (signatures omitting zip code); *Strachan v. Lanier,* 867 S.W.2d 52 (Tex. App.-Houston [1st Dist.] 1993, orig. proceeding) (signatures omitting city or zip code); *Bacon v. Harris County Republican Executive Comm.* 743 S.W.2d 369, 371 (Tex.App.-Houston [14th Dist.] 1988, orig. proceeding) (signatures omitting state); *Love v. Veselka,* 764 S.W.2d 564 (Tex.App.-Houston [1st Dist.], 1988, orig. proceeding) (signatures omitting state). The courts' rationale in these cases for validating the signatures without all the information generally turns on the ability to verify the signer's eligibility without the missing information. *See, e.g., Reese,* 861 S.W.2d at 284. Following the reasoning in these cases, the Court and Bell conclude that the signers' city here is immaterial because the information provided is enough to determine the signer's eligibility to vote in this county election.

But the cases Bell and the Court rely upon cite no authority—other than each other—to support the conclusion that the residence address's sole purpose is to veri-fy the voter's eligibility. And these cases do not hold that, as the Court's leap in logic suggests, the sole purpose in verifying a voter's eligibility is to preclude election fraud. Moreover, these cases issued before the Legislature's 1997 Code amendments. And one amendment states that a petition's signature is valid even if it omits the signer's *state* and *zip code. See* Tex. Elec.Code § 141.063(d). The Legislature's intent in amending the Code is clear. The Legislature recognized the problems arising from courts inconsistently applying the Code as it existed. Thus, it proposed the amendments to, among other things, ensure "less chances for election fraud" and "provide for more efficient operations of elections." *See* Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 331, 75th Leg., R.S. (1997); House Comm. on Elections, Bill Analysis, Tex. H.B. 331, 75th Leg., R.S. (1997). The Legislature's expressly validating signatures without the state and zip code—and continuing to require a city for signature validation—demonstrates its policy decision to accept only those pre 1997 cases upholding petitions omitting the signer's state and zip code, not those omitting the city.

The Court argues that section 141.063's language defining when a petition signature is valid is not mandatory. 91 S.W.3d at 790. However, section 141.062, which governs a petition's validity, does contain mandatory language. It explicitly states that "[t]o be valid, a petition *must . . .* contain valid signatures in the number required by this code; and . . . comply with any other applicable requirements for validity prescribed by this code." Tex. Elec. Code § 141.062(a)(2), (3) (emphasis added). That is, the petition must contain the information section 141.063 requires, which without a doubt does include specifying the city. *See* Tex. Elec.Code § 141.062(a)(2)(A); Tex. Gov't Code § 311.016 (Code Construction Act provi-

sion stating that a statute's using the term "must" creates or recognizes a condition precedent).

Additionally, the Court suggests that, in amending section 141.063 to validate signatures without a state or zip code, the Legislature merely codified some of the earlier case law. Consequently, the Court concludes, it can rely upon the reasoning in those cases to validate petition signatures without a city. However, this view wholly ignores that, although one case before the 1997 amendment held that omitting the signer's city is permissible, *Strachan*, 867 S.W.2d at 53, several others concluded that omitting the signer's city is a fatal defect. *Gray v. Vance*, 567 S.W.2d 16, 17 (Tex.Civ. App.-Fort Worth 1978, orig. proceeding); *Pierce v. Peters*, 599 S.W.2d 849, 851 (Tex. Civ.App.-San Antonio 1980, orig. proceeding); *Shields v. Upham*, 597 S.W.2d 502, 503 (Tex.Civ.App.-El Paso 1980, orig. proceeding).

The Court cursorily concludes these cases are immaterial because they relied upon a prior version of the Election Code that did not expressly state that the Code Construction Act applies. However, this rationale entirely ignores that Article 10 of the revised civil statutes, now at Chapter 312 of the Government Code, governed how to construe that previous version of the Election Code. Notably, Article 10 provided that "[i]n all [statutory] interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." Tex.Rev.Civ. Stat. art. 10, § 6 (current version at Tex. Gov't Code § 312.005). Thus, the Election Code's purpose—or, in the Code Construction Act's words, the object the Legislature sought to attain—was pertinent to the courts' holdings in *Gray*, *Pierce*, *and Shields*, just as it was in *Strachan, Reese, Love,* and *Bacon*.

Furthermore, the Court's illogical conclusion that a petition's signatures are valid even if they omit the signer's city flies in the face of the rule that we must not insert words in a statute unless it is to give effect to the Legislature's clear intent. *See Laidlaw*, 904 S.W.2d at 659; *Cameron*, 618 S.W.2d at 540; *Hunter*, 620 S.W.2d at 552. Here, we know that the Legislature amended the Code to correct inconsistencies in applying the Code, to provide for more efficient operations of elections, and to preclude voter fraud. *See* HOUSE COMM. ON ELECTIONS, BILL ANALYSIS, Tex. H.B. 331, 75th Leg., R.S. (1997). Clearly, the Legislature intended that the 1997 amendments define the specific requirements candidates must follow to obtain valid signatures and to identify which information may be omitted without invalidating a signature. Because of this intent, the Court cannot—as it does here—read "city" out of the subsection that requires this information and then read "city" into the subsection that does not mention this information. TEX. ELEC.CODE §§ 141.063(a)(2)(A), 141.063(d). In doing so, the Court defeats the Legislature's intent.

Additionally, Bell misplaces his reliance on *Fitch*, 834 S.W.2d at 337, to conclude that Haigler can consider the entire petition to determine whether a signer's residence address information is enough. In *Fitch*, this Court determined whether we should remove a candidate's name from the general primary election ballot because her petition stated only that she was running for the March 1992 primary and did not identify the *Democratic* primary. *Fitch*, 834 S.W.2d at 336. Relying on a Code provision stating that the candidate's petition is part of his or her application, we concluded that Fitch's petition was adequate because her application stated she was applying for the Democratic primary election. *Fitch*, 834 S.W.2d at 337.

This case differs significantly from *Fitch*. First, the information on the candidate's petition in *Fitch* was not pertinent to the voters' eligibility. Rather, the information's purpose was to advise the voter about the candidate. Second, and more importantly, in 1997, the Legislature amended the Code provision the *Fitch* Court relied upon to expressly state that "the petition is *not* part of the application for purposes of determining compliance with the requirements applicable to each document, and a deficiency in the requirements for one document may *not* be remedied by the contents of the other document." TEX. ELEC.CODE § 141.032(c) (emphasis added); *see Fitch*, 834 S.W.2d at 338 (Hecht, J., dissenting). This demonstrates that the 1997 Code amendments evidence the Legislature's approval or disapproval of prior case law. Thus, the amendment to section 141.032(c) disavows *Fitch*, while the amendment adding section 141.063(d) approves only those cases allowing a petition to omit the state or zip code.

Finally, the Court contends that the purpose of the residence address, or the "object sought to be attained," is solely to ensure there is enough information to verify the signer's eligibility to vote. Based on this, the Court argues that the signer's city of residence does not demonstrate the signer's eligibility to vote in this election, because Precinct Four comprises more than one city. But this ignores the converse. If the signer's city of residence is not within Precinct Four, then that information would conclusively demonstrate the voter's ineligibility to vote in this election.

Moreover, the Code, both before and after the 1997 amendments, requires more information than the minimal amount necessary to verify the signer's eligibility. If the Code's "residence address" purpose is only to provide voter-eligibility verification, then arguably no information except the voter's name and voter-registration number would be necessary. But "[t]he Election Code does not require just a petition which may be verified. It requires specified information which this petition admittedly did not contain." *Shields*, 597 S.W.2d at 504. Furthermore, even if the residence address's sole purpose is to verify a voter's eligibility, the Legislature's 1997 Code amendments either validated or invalidated those prior cases that determined the necessary information for voter eligibility. The Legislature's choice to continue to require information such as the signer's city—even when such information may seem unnecessary to determine a voter's eligibility for a particular election—is a policy decision to which we should defer. Because the Court refuses to do so today, candidates and those charged with determining eligibility for a place on the ballot have no guidance in future elections for determining what information is mandatory to validate petitions. If the Court truly desires to uphold the Legislature's intent to preclude election fraud, then it would require that signatures on petitions adhere to the Code's minimum, clear, and express mandates.

## V. CONCLUSION

The Code establishes specific requirements a candidate's petition must meet so he or she is entitled to a place on the ballot. Although courts, in the past, have held that substantial compliance will suffice, the Legislature has expressly determined what information is mandatory. The Code's mandates are not onerous, unfair, or unduly restrictive. Indeed, Bell concedes that all the residence address information can be obtained through the Harris County Tax Office. Moreover, the Code allows persons other than the signer to fill in such information. *See* TEX. ELEC. CODE § 141.063(b).

In sum, the Code expressly requires that the petition include the signer's city as part of the signer's residence address and expressly allows a petition to omit only the signer's state or zip code. Today, the Court performs an amazing feat of legal legerdemain in statutory construction by removing the word "city" from one section of the Code and inserting it into another. The Court disregards clear, statutory mandates to circumvent the Code and fix what it perceives to be an inconsequential technicality. Because of the Court's decision, the Legislature's amendments specifically defining what information is and is not necessary are eviscerated. Accordingly, I dissent.